Bahas, Appellant, *v.* Equitable Life Assurance
Society of United States.

Argued May 3, 1937.

Before KELLER,
P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER,
JAMES and RHODES, JJ.

*John E. Evans, Jr.,* of *Margiotti, Pugliese, Evans &
Reid,* for appellant.

*Henry Eastman Hackney,* with him *Seward H.
French, Jr., Reed, Smith, Shaw & McClay* and *Karl W.
Warmcastle,* for appellee.

OPINION BY PARKER, J., July 15, 1937:

This was an action in assumpsit brought to recover
for total and permanent disability on a group life and
disability insurance policy issued by the Equitable Life
Assurance Society (hereinafter referred to as the So-
ciety), insuring employees of the Edgar Thomson Steel
Works and issued to an association of such employees,
and on a subsidiary certificate issued by defendant to
the plaintiff under the terms and conditions of the

group or master policy. A compulsory nonsuit was entered and plaintiff has appealed from the refusal to take off the nonsuit.

The contract, which was the master policy, the attached application, and the certificate, required as a condition of recovery for permanent and total disability that due proof of such disability should be presented "before the expiration of one year from the date of its commencement." A controlling question, if decided adversely to the plaintiff, is whether there is sufficient evidence in the record to sustain a finding by the jury that notice of the claimed disability given to the association of employees was notice to the Society. Was the association the agent of the Society for the purpose of receiving notice and proof of disability? We agree with the conclusion of the court below that it was not.

The employees of the Edgar Thomson plant of the Carnegie Steel Company organized an association known as "Edgar Thomson Steel Works Employees Relief and Safety Association" (hereinafter referred to as the Union). This association was formed of those employees of that plant who wished to participate in life and disability insurance. The employees so associated adopted by-laws, chose their own officers, directors, and employees, and collected dues from the members. An office was maintained at the offices of the steel company and in that place there was a window marked "Insurance Collections" where a full time clerk was stationed who transacted business for the association, received payments from the members, and rendered other service to them.

The Union took out a group insurance policy providing death and disability benefits for members of the association. Those who were then employees of the Edgar Thomson plant and future employees, subject to conditions not important here, were entitled to become members of the Union and participate in the insurance

so long as they remained in the employ of that concern. The group policy was effective as of June 15, 1926, and provided insurance for over 3,000 employees. The Union undertook to pay in one sum in monthly installments the premium due on the policy which premium was based on the amount of insurance in force and the average age of the employees.

The plaintiff, Nicholas Bahas, an employee of the company, made written application for membership in the Union and elected to participate in the insurance. A certificate was issued by the Society to him dated June 15, 1926, pursuant to the terms of the master policy, showing the amount of insurance for his benefit and setting forth the conditions under which benefits would be paid for total and permanent disability, particularly the provision with relation to making proof within the period of one year from the beginning of disability.

All members paid monthly dues to the Union and from the dues so collected the Union paid the Society the monthly installments of premium. No part of the premium or other expenses was paid by the employer, as is frequently the practice in group insurance, but each employee participating in the insurance directed the company to deduct the amount of his monthly dues from his wages and pay them over to the Society. Each employee paid to the Union as monthly dues his proportionate amount of the total premium represented by the face of his policy, all employees, regardless of age, paying the same rate per thousand. In addition, each employee paid from four to six cents per month to cover the expense of operating the Union, including clerk hire and incidental expenses necessitated by the collection of dues, the payment of the premium on the master policy to the Society, and other service rendered to the members.

The plaintiff was, in 1931, working for the steel com-

pany only part time due to the depression, and on his off days secured odd jobs. On August 25, 1931, while painting a house, he fell from a scaffold and received injuries which resulted in his total and permanent disability. His dues to the association were paid until August 31, 1931. No further dues having been paid by plaintiff, he was advised by the association by mail on November 13, 1931, that he was expelled for nonpayment of dues and the Society was notified that he was no longer a member of the Union or entitled to participate in the insurance. At the time of the accident the plaintiff's dues were paid in full and he was then permanently disabled, so that if plaintiff had complied with the terms of the policy as to proof of disability within the year he would have been entitled to recover.

Plaintiff concedes that no notice or proof of his disability was given directly to the Society by him or the Union until February 27, 1933, about eighteen months after the disability began. He depends alone on the fact that he notified the Union of his condition and received from it such a reply that if the defendant desired more specific proof, it was incumbent on defendant to indicate just what form of proof or other information it desired. The presentation of proofs was a condition precedent to the right to disability benefits and the period of one year was a reasonable and valid limitation: *Courson v. New York Life Ins. Co.,* 295 Pa. 518, 145 A. 530; *Brams v. New York Life Ins. Co.,* 299 Pa. 11, 148 A. 855; *Lucas v. John Hancock Mut. Life Ins. Co.,* 116 Pa. Superior Ct. 298, 176 A. 514; *Equitable Life Assur. Soc. v. Adams,* 259 Ky. 726, 83 S. W. (2d) 461; *West. & South. Life Ins. Co. v. Robertson,* 255 Ky. 13, 72 S. W. (2d) 718. It is therefore clear that if the association was not the agent of the Society for the purpose of receiving notice and proof of disability, the plaintiff's case must fail.

It is not seriously contended by appellant that there

would be sufficient evidence to submit to a jury on the question of agency if there were not other circumstances than above set forth. Plaintiff does rely on other matters to which we will refer, viewing such evidence in a light most favorable to the plaintiff and drawing all reasonable inferences of fact in his favor.

The monthly premium to be paid by the association to the Society was subject to revision from time to time, dependent on the amount of insurance in force and the ages of those participating in the insurance. The policy provided in that connection: "7. UNION'S REPORTS. The Union shall furnish the Society with the names of all eligible members as they elect to participate in the insurance hereunder, together with the information as to each necessary to determine the age, the amount of insurance and the date such insurance is effective in accordance with the Insurance Plan, and during the continuance of this policy all changes in status, discontinuances of participation and terminations in the group of members insured hereunder shall be reported to the Society by the Union within one month after they occur." Appellant contends that this was some evidence that the Union was the agent of the Society.

When the plaintiff, in February, 1933, first made claim directly to the Society, he received a reply from it in which it said: "We acknowledge receipt of your letter of February 27 and since it is customary that any matters arising under Group certificates be handled with the Group Patron, we would suggest that you get in touch with Mr. F. A. Power, Secretary-Treasurer, Edgar Thomson Steel Works at Braddock, Pennsylvania, for further information concerning the matter about which you wrote us." This was offered as evidence of a course of conduct on the part of the Society holding out the Union as its agent.

It was shown by officers and employees of the associa-

tion that it was the custom of the association to handle for the employees claims arising against the Society. It was the practice for one claiming under a policy to consult the association. The association had provided a blank form in which the employee entitled to benefits set forth his claim. When the Union received such a claim it retained the form and advised the Society of the claim, which then sent the Union regular proofs of claim to be filled in. The Union assisted in the preparation of the proofs. It frequently investigated the merits of the claim and made a recommendation to the Society with relation to its payment and then forwarded the proofs to the Society, but the Society made its own investigations of the merits of the claim and determined for itself whether it would be paid. Much stress is laid by the appellant on the fact that the individual employees had little or no contact with the Society.

The question here involved has not been considered by the appellate courts of this state. So far as the terms of the written contract are concerned, there is nothing to sustain the contention that the Union was the agent of the Society for the purpose of accepting notice or proof of disability. The contract is one of insurance in which the Society is the insurer and the employees are the insured. The master policy is between the Society and the Union and the Union acted for and on behalf of the employees. There is a clear line drawn between the contracting parties and on one side is the Society, the insurer, and on the other are those insured. The Union must be on the same side of the dividing line as the employees for it is there placed by the contract in direct opposition to the insurer. The Union was a creation of the employees, organized and supported, officered and managed by them, and it paid the premiums due on the policy. The Union was, in fact, the employees acting in concert. It cannot

even be said to be an intermediary acting for or on behalf of both. The interests of the Union were in direct opposition to those of the Society. With respect to the ultimate purpose of the contract, protection, their interests were diametrically opposed and antagonistic. The insurer was to furnish benefits and the Union contracted to pay for such benefits that its members might receive them.

The making of the Union the agent of the Society to receive notice and proof of claims for benefits is not consistent with the relationship among the parties concerned. To hold that the Union was the agent of the Society for such purpose would be to deprive the Society of the protection it was entitled to receive under the clause requiring proof to be made within one year. If the appellant's construction of the contract is adopted, the employee would in fact be reporting his claim to himself or to a class of which he was a member. We would have the anomalous position of an agent, appointed, paid, and controlled by the members of the Union the representative of an adversary. One objection to such a construction is shown by the precise situation existing here. It is conceded that no formal proof of disability was furnished the Society or the Union, but the plaintiff depends on a waiver by the Union of formal proofs by its conduct. In other words, under the construction contended for by the appellant, a voluntary association of employees would not only be the agent of the insurer but would have authority as such to waive provisions in the two-party contract between the Society and the Union, provisions which were inserted for the benefit of the insurer.

To assume that the Union was the agent of the Society would require it to be held that the Union was agent for both the Society and employees for certainly the Union represented the employees in many matters. One cannot serve two masters where their interests are

antagonistic. "An agent is subject to a duty to his principal to act solely for the benefit of the principal in all matters connected with his agency": Restatement —Agency, §387. "Unless otherwise agreed, an agent is subject to a duty to his principal not to act on behalf of an adverse party in a transaction connected with his agency": Ibid., §391. It would require clear evidence to hold that the Society created such an incongruous situation as would be presented.

We do not see how the relationship of the parties was in any respect affected by the provisions in the policy requiring the Union to furnish certain information to the Society as to the persons insured. The amount of outstanding insurance and the resulting premiums were fixed on the basis of such facts. If the Union sought to have the amount of premium revised it was necessary to have this information. In any event, it was information furnished by the insured to the insurer and, so far as any matter of agency was involved, the Union was representing the employees, those actually receiving the benefit of the insurance.

Neither can we discover any support for the appellant in the letter written by the Society to counsel for the insured suggesting that plaintiff consult the Union. The letter was written in answer to a stale claim presented eighteen months after the disability commenced, and after the Union had reported to the Society that plaintiff had lost his right to any insurance. The most natural course was for the Society to suggest that the matter be taken up with those who seemed to be responsible for the situation. We find nothing in this letter inconsistent with the position that the Union was the agent of the employees only.

Again, the practice whereby the employees first presented their claims to the Union which, in turn, asked the Society for blank proofs does not indicate that the Union was the agent of the Society. It was the So-

ciety which had contracted with the Union, which association was acting for the employees. The one who had contracted for the employees in its own name presented the claim on behalf of one of its members. Such conduct was precisely consistent with an assumption that the Union was the agent of the employees. It is significant that the society did not leave with the association blank forms for making formal proofs. The Union at its own expense provided blanks for its members on which they set forth their claims, and when these blanks were filled in the Union made application to the Society for the necessary blanks for making proof of claim to the Society, advising it at the same time of the claim. In this connection the appellant stresses the fact that there was no contact between the employees and the Society, but this situation was entirely consistent with the assumption that the Union was acting for the employees. It so assumed to act in the interests of economy and to make workable the group plan.

It will be observed that the policy makes "due proof of such disability" within one year, not mere notice, the condition precedent to a right to disability benefits. While the Union had notice that plaintiff had been injured and was claiming that he was entitled to benefits, no proofs of total and permanent disability were furnished even to the Union. Mere notice that the insured had suffered an accident or was ill was not a compliance with this provision of the policy: *Brams v. New York Life Ins. Co.*, supra (p. 16). The appellant relies upon a waiver by the Union of the presentation of proofs. The master policy provided: "No agent or other person except the President, a Vice-President, the Secretary, the Treasurer or a Registrar of the Society has power to make or modify any contract on behalf of the Society or to waive any of the Society's rights or requirements, and no waiver shall be valid unless in writing and signed by one of the foregoing

officers." It would require even stronger support to sustain a conclusion that the Union was the agent of the Society authorized to waive the receipt of all proofs than it would to hold that it was the agent for the purpose of receiving and transmitting the proofs.

It seems clear that if the Union failed in its duty to transmit proofs of loss to the insurer, the Union and not the insurer is liable to the plaintiff. We find nothing in the contract that is ambiguous. The language is clear and appellant therefore receives no aid from the rule that a contract of insurance is to be construed most strongly against the insurer.

There are a number of cases in other states where the underlying principles as applied to group insurance policies have been reviewed and, while the conclusions are not harmonious, the decided weight of authority is in accord with the conclusions we have reached. In some of these cases local statutes were involved or the facts varied from those presented here. A leading case on this subject is that of *Duval v. Metropolitan Life Ins. Co.,* 82 N. H. 543, 136 A. 400. In that case the employer arranged for the group insurance, paid a portion of the premiums, and the master policy was issued to it. It was held that the employer, or the group patron, was not the agent of the insurer. It was there said: "That the employer is expected to cooperate with the employee is evident. The whole scheme is paternalistic. The error of counsel, here and elsewhere, is in failing to appreciate that the paternalism is that of employer towards employee. It does not have the effect of making the benevolent parent the agent of the party with whom he inaugurates a contract for the benefit of his children. The line dividing the three parties to the contract according to their interest and real position in these transactions puts the employer with the employee, as opposed to the insurer." The facts in the case we are considering favor the insurer more than

they do in the Duval case. Here Bahas and other employees voluntarily formed the association for the very purpose of securing insurance and it could not be said that the insurance company formed the association in order that it might sell the insurance.

There are a number of cases in other states where it was contended that the employer in somewhat similar situations was the agent of the insurance company and not of the employee. In several of those cases there was involved a state statute which provided that one who solicited insurance was an agent of the insurance company so that the company might be said to be doing business in the state and therefore under the jurisdiction of the courts of that state. It was argued in those cases that the employer or association which solicited the employees for insurance was therefore the agent of the insurance company. It was held that such soliciting employer was not the agent of the insurance company. See *Conn. Gen. Life Ins. Co. v. Speer,* (Ark.) 48 S. W. (2d) 553; *Davis v. Metropolitan Life Ins. Co.,* (Tenn.) 32 S. W. (2d) 1034; *Equitable Life Assur. Soc. v. Hall,* (Ky.) 69 S. W. (2d) 977.

In *Ammons v. Equitable Life Assur. Soc.,* (N. C.) 169 S. E. 807, there was a provision similar to the one in the case at bar requiring proof of total and permanent disability within a year from its commencement. Plaintiff contended that he had reported his condition to the paymaster of his employer who held the master policy and that the employer was the agent of the insurance company. The court said that there was evidence that the paymaster looked after certain disability claims, but there was nothing to show whether he so acted on behalf of the insurance company or for the employer corporation, and that the burden on the plaintiff to show evidence of agency was not sustained. Also, see *Dewease v. Travelers Ins. Co.,* (N. C.) 182 S. E. 447.

The appellant contends that the case of *Ozanich v.*

*Metropolitan Life Ins. Co.*, 119 Pa. Superior Ct. 52, 180 A. 576, is consistent with the position maintained by him. We find nothing in that case to support such contention. The question of agency was not there discussed. Just as in the present case, the policy provided that the insurance was for the benefit of the employees only while they remained in the employment of a designated company. The question involved was whether the plaintiff had ceased to be an employee before the time of his death. The matter examined by this court was whether the evidence sustained a finding by the jury that plaintiff's decedent was still an employee when he died. Agency was not either involved or considered in that case, for the status of the insured was fixed independently of any notice to the patron.

The cases of *Equitable Life Assur. Soc. v. Singletary,* 71 Fed. (2d) 409, and *Porter v. Equitable Life Assur. Soc.,* (Mo.) 71 S. W. (2d) 766, give some support to appellant's argument, but we do not agree with the reasoning employed.

If this case were to be decided on a basis of our sympathy for the plaintiff, it would give us little trouble, for the evidence as presented to us indicates that he has suffered a wrong. The difficulty, however, is that the evidence does not indicate that the offending party was the insurer but points quite definitely to the dereliction of another. The case has been very ably presented and the court appreciates the assistance it has received from counsel on both sides through exhaustive briefs and able arguments presented. We are, however, convinced that there is no evidence to support the conclusion that the Union was the agent of the Society. It was not the agent of the Society to receive either notice of disability or formal proofs of the claim. Certainly we cannot support the contention that the Union was the agent of the Society for the purpose of waiving pre-

180

sentation of proofs within one year of the beginning of disability.

Judgment affirmed.