## Peyton *v.* United States Steel Company, Appellant.

Argued October 3, 1951. Before DREW, C. J., STERN, STEARNE, JONES, BELL, LADNER and CHIDSEY, JJ.

*P. K. Motheral*, with him *Reed, Smith, Shaw & Mc-Clay*, for appellant.

*Samuel J. Goldstein*, for appellee.

OPINION BY MR. CHIEF JUSTICE DREW, November 13, 1951:

This action in assumpsit involves a group life insurance policy and was brought by plaintiff, Mary Peyton, a beneficiary under the policy, against the United States Steel Company to recover damages suffered as a result of defendant's failure to maintain her deceased husband's, John Peyton, insurance. A jury returned a verdict in plaintiff's favor in the sum of $2810, which included interest on the claim of $2000, and from the judgment of the lower court denying defendant's motion for judgment n.o.v., it has appealed.

John Peyton began working for defendant on July 9, 1943, and on that day made application for and obtained a certificate of life insurance under a group insurance policy issued by the Equitable Life Assurance Society of the United States to defendant and its employees who wished to participate therein. The certificate was in the sum of $2000 and named plaintiff as beneficiary and the application authorized defendant

to deduct from Peyton's earnings sums sufficient to cover his contributions towards the premium charges.

Peyton worked for defendant until August 14, 1943, when he failed to report for work at one of its mills. As of that date, defendant owed him wages totalling $11.69, which were later increased to $12.48 as a result of a retroactive adjustment in January, 1944, and the latter sum still remains in defendant's custody. On August 18, 23 and 24 of 1943, Peyton worked for a landscape gardener and was paid at the end of each day. He did not return thereafter to defendant's mill nor did he work for any other employer. But, on August 28, 1943, he was charged with a violation of the criminal law and on September 10, 1943, after pleading guilty, was sentenced to the Allegheny County Workhouse for a term. While detained in the workhouse, Peyton was found to be suffering from a tubercular condition and was thereupon transferred by court order to the Cresson Sanitarium on October 15th. A month later, Peyton deserted from the sanitarium and returned to his home where, within a few hours, he was apprehended by the police and again placed in the workhouse where he died on January 29, 1944.

Plaintiff initially instituted suit against the insurance carrier on the certificate issued her deceased husband. But judgment n.o.v. was entered against her based on the admitted proof that, since no premiums had been forwarded by defendant to cover the certificate, the insurance automatically ceased on September 30, 1943, for lack of payment of the required contribution to the fund. This action was then brought on the theory that Peyton gave up his active employment with defendant temporarily because of illness, that defendant had in its possession wages which were owing deceased and, under the terms of the application for insurance, was authorized to use these funds to keep up Peyton's premium payments and should have done so.

The provisions of the group policy were such that, if, in the instant case, Peyton's premium for the month of October were paid, his life would have been insured as of the time of his death, provided he was totally disabled as of October 31, 1943. Since it was defendant's practice to pay the monthly premium during the early part of the preceding month, Peyton's premium for the month of October conceivably would have been paid by defendant in September if it felt that it was obliged to do so.

It is not denied by defendant that a duty was imposed upon it to make the premium payments on Peyton's insurance out of funds available from his earnings so long as he was in its employ, nor does it deny that sufficient funds were being held to Peyton's credit to permit the payment of the premium for the month of October. But it does contend that on August 13, 1943, Peyton voluntarily left its employ and from that time on, under the terms of the group policy, it was no longer responsible for the payment of premiums on his insurance. However, there is no evidence in the record that Peyton intended to permanently leave his employment with defendant or that defendant discharged him. Plaintiff testified on cross examination that on as late as September 20, 1943, a post card notice from defendant was delivered to Peyton's home informing him that his insurance might lapse. One of defendant's record forms, titled "Termination Notice", was introduced into evidence to show that on October 12, 1943, defendant had marked in Peyton's record the words "Last day worked August 13, 1943." Stipulations were also submitted by the parties at the trial that, if Dr. Hadley and Dr. Royer, superintendent of the Cresson Sanitarium, had been called they would have testified that Peyton was suffering from an advanced case of pulmonary tuberculosis on August 13, 1943. Dr. Hadley would have testified in addition, that, in his opinion, Peyton

was totally disabled industrially as of that date. But the only evidence offered to show what Peyton's intentions were at the time he stopped working for defendant was the testimony both parties agreed Della Cummings would give if she were called. Miss Cummings, a registered nurse employed by defendant, offered to testify that she had been sent to Peyton's home on August 19, 1943, to inquire why he had not reported to work since the 13th of the month and that the deceased said that he had been sick but intended to return to work soon after he had made "some quick money". Plaintiff, the only witness called upon to testify, explained that deceased's remark to nurse Cummings was prompted by the necessity to buy food and milk for plaintiff, who had just returned from a hospital, and her two children. By working three days for the landscape gardener, and being paid for this work at the end of each day, Peyton earned sufficient money to meet this need. He did not work again after the 24th of August for within four days he was arrested and remained in the custody of the county until his death.

We agree with the expression of the learned Judge PATTERSON, who, in the first trial of this case, said: "We are reluctant to conclude that an employee can leave his job, enter other employment conceivably more hazardous, and expect his insurance policy to continue to protect him under the lame device that he intended to return after a few pays from his later employer. It seems to us that this is the very situation that makes necessary the automatic termination of employment and insurance upon cessation of active work by an employee voluntarily. However . . . under the peculiar circumstances of this particular case, we think there is a jury question . . ." What Peyton's intentions were as to the future of his employment status with defendant at the time he stopped active work for defendant and when defendant decided that Peyton was no longer an em-

ployee were clearly questions of fact which had to be submitted to the jury. There was sufficient evidence on the record to justify a finding by the jury that Peyton had not severed his employment with defendant on August 13, 1943, was not considered by defendant to have done so until after such time as it should have paid the premium due on Peyton's insurance for the month of October and that he was totally disabled as of October 31, 1943. In view of the jury's verdict that defendant was liable to plaintiff in the amount that she would have received had the insurance coverage been maintained, the jury must have so found and its verdict was properly sustained by the court below.

Judgment affirmed.