## Hanaieff, Appellant, v. Equitable Life Assurance Society of the United States.

Argued October 7, 1952. Before STERN, STEARNE, BELL, CHIDSEY and MUSMANNO, JJ.

*Samuel J. Goldstein,* for appellant.

*Thomas Lewis Jones,* for appellee.

OPINION BY MR. CHIEF JUSTICE HORACE STERN, November 18, 1952:

Defendant Insurance Company issued to the United States Steel Corporation a group life insurance policy insuring its employes, and those of its subsidiaries, who elected to be insured thereunder.

Nikita Prewalla was an employe of Carnegie-Illinois Steel Company, a subsidiary of the United States Steel Corporation, and there was issued to him an in-

dividual certificate under the policy, the amount of his coverage being $2,500 in October 1946. The beneficiary named was the plaintiff, Dora P. Hanaieff. On October 19, 1946 Prewalla became ill, was totally and continuously disabled thereafter, and never again resumed work; he died on January 4, 1948.

Under the practice and rules of the employer an employe's monthly contribution toward the insurance premium was deducted from the first pay each month for the premium due the following month; accordingly, the premium due for November, 1946 had been deducted from the first pay due Prewalla in October, 1946. Under these same rules, when an employe had no wages due on the first day from which his contribution could be deducted, he was required, if he wished to continue his insurance coverage, to make his premium contribution in cash before the end of the month for which a premium had already been paid. On November 26, 1946 Prewalla sent a relative, one Evans, to the plant with instructions to pay the premiums due for the months of December, 1946, January and February, 1947. Evans was told by the clerk that only one month's premium could be accepted, so he paid for the month of December, 1946. On December 15 he returned for the purpose of paying the following month's premium, but he was then informed that, because of Prewalla's absence from his active employment for a period in excess of 30 days, it would be necessary that a medical statement in regard to his disability be presented; such a certificate was never furnished. The Carnegie-Illinois Steel Company noted on its records that Prewalla's insurance was terminated as of December 31, 1946 for non-payment of premium contribution, and also that his employment was terminated as of January 9, 1947 because of absence from the plant for over 30 days "for cause unknown".

The group insurance plan of Carnegie-Illinois Steel Company was operated on a "self-accounting" basis whereby the individual records were maintained by the employer, who collected the premium contributions, paid the premiums to the Insurance Company, and maintained the individual records of the employes. The policy provided that "The insurance of any employee shall *automatically* cease upon the occurrence of any of the following events: . . . (b) *the cessation of premium payments on account of such employee's insurance hereunder,* (c) the thirty-first day following the termination of his employment . . . . Cessation of active work by an employee shall be deemed to constitute the termination of his employment except that an employee absent from work because of disability due to injury or sickness . . . will, *subject to the continuance of premium payments on account of such employee's insurance,* be regarded as still in the employment of the employer during the period of such disability . . . until the effective date of the discontinuance of such employee's insurance as entered on the employer's records, . . . ." There was a further provision that, although the insurance upon the life of an employe was automatically to cease upon the thirty-first day following the termination of his employment, if the employment was terminated, no matter for what reason, while he was still insured under the policy he should be entitled to have issued to him, without further evidence of insurability, upon application made within thirty-one days after such termination and upon the payment of the appropriate premium, an individual policy of life insurance.

Plaintiff bases her claim against the Insurance Company on the ground that Prewalla had made tender of premium payments but acceptance had been improperly refused; also that no notice of the termination of

his employment had been given him, thus denying him the opportunity of applying to the Insurance Company for an individual life insurance policy: (*Jones v. Metropolitan Life Insurance Company*, 156 Pa. Superior Ct. 156, 39 A. 2d 721). The court below sustained a compulsory nonsuit entered by the trial judge and entered judgment for defendant; from that judgment plaintiff now appeals.

Whether or not the employer, Carnegie-Illinois Steel Company, was justified in refusing acceptance of the payments tendered for the premiums, and whether or not it was justified in entering upon its records that Prewalla's insurance was terminated as of December 31, 1946 and that his employment was terminated as of January 9, 1947, are questions which need not now be considered for they would be pertinent only in an action brought against the employer. Plaintiff claims that the employer was the agent of the insurer, which therefore could not take advantage of the employer's delinquencies. But, while it is true that there is a diversity of opinion among the several jurisdictions as to whether, in the case of such group insurance policies, the employer occupies the role of agent of the employes or of the insurer, in our own State, as in the Supreme Court of the United States, this question has been definitely resolved against plaintiff's contention. It was stated in *Boseman v. Connecticut General Life Insurance Co.*, 301 U. S. 196, 204, 205: "When procuring the policy, obtaining applications of employees, taking payroll deduction orders, reporting changes in the insured group, paying premiums and generally in doing whatever may serve to obtain and keep the insurance in force, *employers act not as agents of the insurer but for their employees or for themselves.*" In *Bahas v. The Equitable Life Assurance Society of the United States*, 128 Pa. Superior Ct. 167,

193 A. 344 (affirmed per curiam, 331 Pa. 164, 200 A. 91), a Union organized by the employes of a plant of the Carnegie Steel Company, took out a group insurance policy providing death and disability benefits for its members. The members paid monthly dues to the Union and from the dues so collected the Union paid the Insurance Company the monthly installments of premium. It was held that the Union was not the agent of the insurer but acted for and on behalf of the employes, and that, for any failure on the part of the Union to transmit proofs of the plaintiff's disability to the insurer, the Union and not the insurer was responsible. In *Miller v. The Travelers Insurance Company*, 143 Pa. Superior Ct. 270, 274, 17 A. 2d 907, 908, 909, (allocatur refused) it was said: "The life insurance policy before us is for a distinct form of insurance differing in many if not most of its aspects from the ordinary life insurance, where usually a beneficiary may acquire a vested interest. Under group insurance the employer acts for itself or himself, as the case may be, and on behalf of employees in order that they may obtain cheap insurance, thus rendering the employees a service. The employer receives no compensation from the insurance company and *is not its agent*." In *Best v. The Equitable Life Assurance Society of the United States*, 165 Pa. Superior Ct. 452, 68 A. 2d 400, (affirmed per curiam on the opinion of the Superior Court, 365 Pa. 418, 76 A. 2d 220), the plaintiff, an employe covered by a group life insurance policy, contended that she had a sufficient amount due her in back pay when she stopped work from which her employer should have paid her monthly premium, and, if such payment had been made, the insurer's defense of non-payment of premium could not have been made. The Court said (p. 456, A. p. 402): "... *in deducting premium payments from an employe's wages and transmitting them*

*to the insurer, the employer company acted as agent
of the insured and not of the insurer* . . . . And if the
employer had failed in the performance of a duty in
that respect plaintiff's right of action would have been
against the employer and not the insurer."

The group insurance policy in the present case pro-
vided that the insurance of an employe automatically
ceased upon the cessation of premium payments. And,
while it further provided that in the case of an em-
ploye's absence from work because of disability due
to injury or sickness he was to be regarded as still in
the employ of the employer during the period of such
disability until the effective date of the discontinuance
of his insurance as entered on the employer's records,
the protection thus given him was made expressly sub-
ject to the continuance of premium payments on ac-
count of such employe's insurance. Under such provi-
sions, therefore, it is clear that either the failure of
the insurer to receive payments of the monthly pre-
miums due, or the termination of the employment and
resulting discontinuance of the employe's insurance
as entered on the employer's records, causes an auto-
matic cessation of the employe's insurance: *Peyton
v. The Equitable Life Assurance Society of the United
States,* 159 Pa. Superior Ct. 318, 48 A. 2d 145, (al-
locatur refused); *Brown v. Carnegie-Illinois Steel
Corp.,* 168 Pa. Superior Ct. 380, 77 A. 2d 655 (af-
firmed per curiam, 368 Pa. 166, 81 A. 2d 562). Since
the defendant Insurance Company did not receive pay-
ment of the premiums due after December 31, 1946,
Prewalla's insurance, in accordance with the express
terms of the policy, thereupon automatically ceased,
nor, for the reason already stated, was there any ob-
ligation on the insurer's part to notify him of the ter-
mination of his employment, whatever may have been
the duty of the employer in that respect. In short,

any alleged errors of commission or omission of the employer here complained of are not to be visited upon the insurer, and accordingly redress therefor must be sought from the employer and not from the defendant: (cf. *Peyton v. United States Steel Co.*, 368 Pa. 591, 84 A. 2d 192).

Judgment affirmed.

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

On July 1, 1935, the Equitable Life Assurance Society of the United States, in arrangement with the Carnegie Steel Company, subsidiary of the United States Steel Corporation, insured Nikita Prewalla, a laborer employed at the Homestead Steel Works of the steel company, in a group insurance plan. Every month from that time on, the insurance premium policy was deducted from this workman's wages. On October 19, 1946, that is, after paying premiums for eleven years and three months, the workman collapsed while on the job. The mill surgeon, a Dr. E. V. McCormick, examined him and sent him home in an ambulance. Later he sent him to a hospital, where eventually he died on January 4, 1948.

Throughout the 135 months that Prewalla worked at the Carnegie Steel Company plant he never had any reason to assume that the company responsible for his insurance was any one other than the steel company. He had no contact with the insurance company whatsoever and indeed was instructed that in the event of absence from employment he was to pay the monthly premium on his policy to the steel company. The insurance company, of course, knew of and approved this plan; in fact, required that the premiums be paid in this manner.

On October 26, 1946, Prewalla sent one of his relatives, a Michael Evans, to the mill to meet the monthly premium for November, and, in order to protect his policy more completely, directed him to pay premiums also for the months of January and February, 1947. The steel company clerk entrusted with the responsibility of collecting these premiums refused the payments for the extra two months, and informed Evans he could return in December to pay for the January premium. Evans did return with the premium payment in December and was now informed that since Prewalla had been absent from work in excess of 30 days, a medical statement showing Prewalla's disability had to be supplied. Evans applied for the medical certificate to Dr. McCormick, who had treated and hospitalized Prewalla but the doctor refused to supply such certificate unless, as he said, he had "certified evidence of the birth date of Prewalla." The records of the Carnegie Steel Company showed that Prewalla was born on May 3, 1882, and his birth date was accepted as true by the insurance company for eleven years and three months. In fact, no one questioned its correctness. In addition, the age of the insured was in no way involved, the policy providing quite simply for death benefits regardless of age. The steel company's insistence on a birth certificate, in the light of the circumstances, was simply a tripping log thrown into the path of a blind man.

On January 7, 1947, the superintendent of the steel plant terminated Prewalla's employment, giving as reason for this action that Prewalla had absented himself from the plant for over 30 days for "cause unknown." Considering the fact that the company records clearly and conclusively revealed that Prewalla was absent on account of illness which had been treated at the plant itself, the superintendent's entry can only be

ascribed to dishonesty or culpable neglect and indifference to the status of men in his charge.

There is no evidence that the insured ever saw the policy in this case, and even if he had seen it, it would have meant little to him since he was illiterate (and this information appeared on the company's records.) Not only was the insured without education; he could not speak English. All this the company knew, or was charged with knowing since the records so indicated.

Here we have the clearest case of a man dealing wholly and exclusively with his employer, the steel company, not even knowing of the existence of the insurance company.

It is not enough, in my opinion, to say that the plaintiff can obtain redress from the steel company. To hand to the beneficiary of this policy a law suit, in return for the decedent's faithful compliance for 135 months with the rules laid down by the insurance company itself, is scant comfort indeed, and, in my view of the case, unjust. ". . . where a principal has, by his voluntary act, placed an agent in such a situation that a person of ordinary prudence conversant with business usages and the nature of the particular business is justified in assuming that such agent has authority to perform a particular act and deals upon that assumption, the principal is estopped as against such third person from denying the agent's authority, he will not be permitted to prove that the agent's authority was, in fact, less extensive than that with which he apparently was clothed." American Jurisprudence, Vol. 2, §104.

This is not a case where one party to the contract sought a special privilege. It was the insurance company which required that the insured pay the premiums to the steel company, and the premiums were so paid until the collecting agency, by demanding an

impossible and superfluous birth certificate, lowered a steel curtain in the face of the decedent's conscientious attempt to meet the insurance company's requirements.

Neither the lower court nor the majority opinion points out any duty devolving upon the insured which was not fulfilled. To now withhold from the insured's beneficiary the money which he paid, through the steel company, into the coffers of the insurance company, is in my opinion a grave injustice.

I dissent.