## Moore v. The Prudential Insurance Company of America

Before Finkelhor and Farino, *JJ.*

*Samuel J. Goldstein*, for plaintiff.
*John H. Scott, Jr.*, for defendant.
*Harold Gondelman*, for additional defendant.

FINKELHOR, *J.*, May 2, 1979—The above matter is before the court en banc on the exceptions of defendant, The Prudential Insurance Company of America, to the opinion and non-jury adjudication

of the court in favor of plaintiff against defendant in the amount of $10,000 under a group policy of life insurance issued to plaintiff's decedent, George Moore, and in favor of Moore's employer, additional defendant, Young Men & Women's Hebrew Association.

The issues before the court are whether plaintiff's decedent received notice of the cancellation of the policy and whether the duty to provide such notice rests on Prudential, the insurance carrier, or Y-IKC, the employer-policyholder of the group insurance policy.[1]

Briefly stated, this is an action in assumpsit wherein plaintiff, Dorothy G. Moore, the wife and beneficiary of George Moore, seeks to recover insurance benefits in the amount of $10,000 under a group policy of life insurance on the life of her deceased husband, George Moore. The policy was issued by defendant, The Prudential Insurance Company of America (hereinafter Prudential), on or about September 1968 through the Jewish Welfare Board and the additional defendant, Y-IKC, formerly Young Men & Women's Hebrew Association (hereinafter Y-IKC). Until January of 1973, the Y-IKC paid 30 cents and plaintiff's decedent paid $5.70 per pay period to cover the cost of said insurance coverage.[2]

After a detailed study and revision of additional defendant's total personnel practices, on or about April 18, 1973, this group policy was cancelled by

1. While the court has already written one opinion in this case, 124 Pitts. L.J. 199, we believe that the issues are sufficiently important to warrant a fuller discussion.

2. The employer paid the entire premium the final three months that the policy was in effect.

the policyholder-employer. Three days later, on April 21, 1973, George Moore met an accidental death and defendant Prudential has declined to make payment under the policy. Thereupon, plaintiff filed suit against Prudential and Prudential joined the employer Y-IKC.

It is the position of defendant that, under the facts of the record, notice of the cancellation was given by the Y-IKC to George Moore. Defendant then argues that the employer-policyholder is the agent of the employe and cancellation by the employer is to be imputed to the employe. In the alternate, defendant contends that any duty to give notice to plaintiff fell upon the employer-policyholder and, absent a verdict against the employer, there can be no verdict against the insurer.[3]

It is plaintiff's position that the employer-policyholder is not the agent of the employe and that, as a matter of fact, the record does not establish notice of the policy cancellation to the decedent.

The record in this case is extremely slight and is far outweighed by briefs filed by Prudential and plaintiff.[4] George Moore was an employe of the Y-IKC and, as such, participated in the group insurance program. He was employed as a locker room attendant at a salary of approximately $4,000 per year. He was a black man and the only black man employed at the Oakland facility of the Y-IKC. Following a study of its employment practices, Y-IKC elected to cancel its participation in the

3. Defendant *erroneously* interprets the court's earlier opinion in favor of Y-IKC as a finding that notice was given to the decedent.

4. While Y-IKC participated in the hearing, it did not file exceptions nor a brief in the subsequent proceedings.

coverage provided by defendant's policy of group insurance, and to substitute a new form of insurance paid by the Y-IKC up to 50 percent of the employe's salary. Under this plan, Moore' coverage was reduced to approximately $2,000. On or about January 15, 1973, the Y-IKC circulated a general memorandum of approximately six pages on personnel practices to all employes and included therein a paragraph on life insurance.[5] In addition, on or about April 10, 1973, a meeting was held of Y-IKC employes to explain the change in insurance benefits. There is no direct evidence that George Moore signed up for the new insurance policy at this meeting nor that he was aware that his insurance coverage under the new plan would be reduced from $10,000 to $2,000. No direct notice was given by Prudential to George Moore that his insurance coverage was terminated.

The law is clear in Pennsylvania that, under a group insurance policy, the insured-employe must be regarded as a party to the insurance contract to the extent that the group policy cannot be cancelled or any of its effective provisions eliminated or

---

5. Page 5 of this document provided as follows: *"Life Insurance*: The retirement plan provides, in case of death, an insurance benefit equal to 150 percent of the staff member's annual salary up to a maximum of $40,000. In addition, the amount sufficient to provide a total of 200 percent of his annual salary in life insurance, inclusive of the insurance benefits of the retirement plan. In case of death, the staff member's beneficiaries receive, as well, the total amount of the contributions paid by the staff member to the retirement plan, plus interest. (Death benefits available after 1 yr. service.)" Death benefits both before and after the change in life insurance were a combination of insurance and a retirement plan.

changed by either the employer or insurer without giving the employe notice of the intended cancellation: Poch v. Equitable Life Assurance Society, 343 Pa. 119, 22 A. 2d 590 (1941); Clayton v. National Electric Products Corp., 421 Pa. 375, 219 A. 2d 595 (1966). See also Harrison v. Ins. Co. of North America, 294 Ala. 387, 318 So. 2d 253 (1975).

In Poch v. Equitable Life Assurance Society, supra, the Supreme Court of Pennsylvania was called upon to determine whether the disability provisions of a master group policy could be deleted by amendment without reasonable notice to the insured employes.[6] The policy was contributory.

The court stated as follows:

"Upon a review of the authorities, and upon reason as well, our conclusion is that, under a group policy like that now before us, the insured employee must be regarded as a party to the insurance contract at least to the extent that the group policy cannot be cancelled or any of its effective provisions eliminated, by either the employer or insurer, *except in a manner provided by the policy, without giving such employee notice of the intended cancellation or modification*, so that he may timely exercise any conversion privilege which may be available to him under the terms of the policy or, where such privilege is not given, in order that he may seasonably obtain similar insurance protection on his own account elsewhere; further, that in the absence of notice, an agreement of cancellation or modification like that here entered into between the Association and the Society is, as to

---

6. The policyholder was not a party.

such employee, *legally ineffective to relieve the insurance company from liability* under the original policy." 343 Pa. at 128. (Emphasis supplied.)

In the particular policy under consideration in the present case, the Y-IKC paid only 30 cents per pay period, as opposed to a payment of $5.70 by the insured. However, the master policy itself was not made part of the record and the court cannot determine the specific policy provision for termination nor whether the obligation to notify the insured was placed upon the insurance carrier or the policyholder-employer or was not covered by the policy.

We have carefully examined the various statutory provisions relating to the regulation of insurance coverage in this Commonwealth and there appears to be no clear statement of the primary obligation to provide notice and the elements of said notice to the employe.

The Act of May 11, 1949, P.L. 1210, specifically regulates group life insurance, and section 7 of said statute, 40 P.S. §532.7, provides for notice of conversion privileges as follows:

"If any individual insured under a group life insurance policy hereafter delivered in this State becomes entitled under the terms of such policy to have an individual policy of life insurance issued to him without evidence of insurability, subject to making of application and payment of the first premium within the period specified in such policy, and if such individual is not given notice of the existence of such right at least fifteen days prior to the expiration date of such period, then, in such event the individual shall have an additional period within which to exercise such right, but nothing herein contained shall be construed to continue any

insurance beyond the period provided in such policy. This additional period shall expire fifteen days next after the individual is given such notice but in no event shall such additional period extend beyond sixty days next after the expiration date of the period provided in such policy. *Written notice presented to the individual or mailed by the policyholder to the last known address of the individual or mailed by the insurer to the last known address of the individual as furnished by the policyholder shall constitute notice for the purpose of this section.*" (Emphasis supplied.)

We believe that this same standard for written notice is also applicable to notice of policy termination as set forth in Poch v. Equitable Life Assurance Society, supra.

We have carefully examined the record in these proceedings and do not believe that, as a matter of fact, defendant has established that adequate notice was given of the cancellation of the policy to the insured. While we agree that efforts were made by the Y-IKC to alert the insured and other employes of changes in personnel practices, this notice was not in writing nor specifically targeted at the insurance program.[7] Witnesses Rotman and Altmar testified to an employes' meeting held April 10, 1973, at which the terms of the new insurance plan and the cancellation of the old plan were discussed, and it was the recollection of both witnesses that George Moore was present at the meeting.

---

7. See footnote 5. Employes received death benefits apart from the insurance program and the personnel practices memorandum was directed toward the total program.

However, courts that have considered the adequacy of notice have rejected the posting of bulletin boards or the distribution of literature on the proposed new plan as proper notice: Hayes v. Equitable Life Assurance Society, 235 Mo. 1261, 150 S.W. 2d 1113 (1941). In Poch, supra, notice of cancellation was also posted on a bulletin board and new individual certificates were issued to be distributed to the insured: 343 Pa. 123. Notice is not general dissemination of the proposed change, but notice to the specific insured.

Defendant relies on Clayton v. National Electric Products Corp., supra, where the employer also restructured its benefits program and offered to the insured, in place of contributory life insurance, a non-contributory insurance policy with lower coverage. However, the retired employe received *written* notice from the policyholder and *accepted this by letter*. In other words, in Clayton, not only was notice given, but proof of the acceptance of the new policy was part of the record. If decedent had, in the present proceedings, applied for the alternate policy, defendant's position would be more tenable.[8]

As stated in Lindgren v. Metropolitan Life Ins. Co., 206 N.E. 2d 734 (Ill. 1965): "'The reason for the rule of notice is to secure to the employee an opportunity to take advantage of his conversion right or to procure other insurance coverage.'"

Further, in view of the sharp reduction of George Moore's life insurance under the new plan, it is not sufficient that plaintiff's decedent could have been,

---

8. While plaintiff accepted payment under the second policy, neither side has argued "waiver" and it is not being considered by the court.

or may have been, at meetings wherein life insurance was discussed but notice to be adequate must be notice to the specific individual.[9] While defendant states that the policy in this case did not include a conversion right, Moore was nevertheless deprived of the opportunity to secure other insurance coverage. Therefore, the burden of proof placed upon the carrier defendant has not been satisfied.

The next question, assuming the inadequacy of notice, is whether the primary duty to notify the insured falls upon the employer-policyholder or the carrier. This post-Pochian question has not been answered. The Act of May 11, 1949, P.L. 1210, 40 P.S. §532.7, previously relied on by the court, provides that written notice shall be given to the insured by the policyholder or by the insurer. However, the act does not set forth primary or secondary liability for said notice.

It is defendant's position that, as the policy was cancelled by Y-IKC, this duty to give adequate notice to plaintiff's decedent was on Y-IKC. Defendant further argues that, under the law of Pennsylvania, the employer is the agent of the employe: Hanaieff v.Equitable Life Assurance Society, 371 Pa. 560, 92 A. 2d 202 (1952); McFadden v. Equitable Life Assurance Society, 351 Pa. 570, 41 A. 2d 624 (1945); Best v. Equitable Life Assurance Society, 165 Pa. Superior Ct. 452, 68 A. 2d 400 (1949), aff'd 365 Pa. 418, 76 A. 2d 220 (1950); Bakos v. Travelers Ins. Co., 122 Pitts.L.J. 354 (1974). Therefore, under defendant's theory, cancellation by the employer is cancellation by the employe.

---

9. The facts in this case underline the importance of written notice. No record was kept of the attendance at the meeting and Moore did not apply for the new insurance coverage.

Defendant is correct in that the Pennsylvania cases have held that the policyholder-employer is the agent of the insured in the day-to-day administration of the group insurance contract. As stated in Bahas v. Equitable Life Assurance Society, 128 Pa. Superior Ct. 167, 193 Atl. 344 (1937), aff'd 331 Pa. 164, 200 Atl. 91 (1938), in deducting premium payments from an employe's wages and transmitting them to the insurer, the employer acts as agent for the insured, not the carrier.[10] However, none of the cited cases has imputed cancellation by the employer to the employe. If defendant's argument is followed to its conclusion, the Poch decision is no longer valid.

Under a similar fact situation to the instant proceedings, the late Judge Olbum of the Allegheny County Common Pleas Court in Wahlen v. Occidental Life Ins. Co., No. 1405 April Term, 1963, an action against the insurer, the employer, and the welfare fund of an international union, interpreted the contract to impose the duty to notify the insured of the lapse of insurance coverage on *all* of defendants.

However, in this case, defendant carrier elected not to place the group insurance policy into the record. There is nothing before the court to indicate the duty imposed by the agreement. Thus, defendant carrier is asking the court, in this case, the trier of fact, to speculate that the policyholder assumed the obligation to give notice of the cancellation to the decedent. In the absence of some evidence in

10. Plaintiff's counsel cites in his brief the trial court opinion of Best v. Equitable Life Assurance Society, No. 376, April Term, 1946, Patterson, *J.*, to the limited agency of the employer.

the record, we do not believe that such duty can be inferred.

In reviewing cases where liability has been imposed upon the employer-policyholder, the courts have found negligence in the administration of the plan, i.e., premiums have not been forwarded or the policyholder had knowledge of facts not known to the carrier. See Bakos v. Travelers Ins. Co., supra. Thus, a reason for the duty of notice upon the insurer is to protect the insured under a group policy from the effects of arbitrary or unilateral action by the policyholder. Therefore, in the absence of negligence in the administration of the policy or a contractual provision, we believe that the primary duty to provide notice rests on the carrier.

As noted in the recent case of Brakeman v. Potomac Ins. Co., 472 Pa. 66, 371 A. 2d 193 (1977), the court stated that: ". . . An insurance contract is not a negotiated agreement; rather its conditions are by and large dictated by the insurance company to the insured. The only aspect of the contract over which the insured can 'bargain' is the monetary amount of coverage." 472 Pa. at 72, 371 A. 2d at 196.

In the context of group policies, the insurance carrier has the power to adjust or modify the duty of notice under the major contract. Absent such contractual delegation, the primary obligation to notify the insured of the termination of the agreement remains with the carrier.

In this particular proceeding, the insurance carrier gave no notice to the insured that a life insurance policy in the amount of $10,000 in which the bulk of the premium was paid by the employe was no longer in effect and has submitted no proof to the court that this responsibility to notify the employe

of the termination of coverage was delegated to another. Therefore, while the attempted communication by Y-IKC does not meet the test of adequate notice, defendant Prudential has failed to meet its burden of proof to establish the liability-over of the additional defendant.

Prudential does not argue or discuss the effect of the payment by another insurance carrier of death benefits. However, in reviewing the record, we note that plaintiff has accepted a total of $4,000 in insurance benefits from the new carrier of the Y-IKC insurance program. Therefore, in part, the obligation imposed by the insurance contract has been met and defendant is entitled to deduct such payment, made to the beneficiary, from the amount due and owing under the policy carried by Prudential.

Based upon the above discussion, the exceptions of defendant are dismissed, but the verdict will be reduced in accordance with this opinion.

## ORDER

And now, May 2, 1979, upon the exceptions of the original defendant, The Prudential Insurance Company of America, to the non-jury adjudication in favor of plaintiff and after full consideration of the record and the briefs and arguments of counsel, it is hereby ordered that said exceptions are denied.

It is further ordered that the previous adjudication is hereby vacated and a finding is made in favor of plaintiff in the amount of $6,000 with simple interest against Prudential Insurance Company and in favor of Young Men & Women's Hebrew Association, and its successors.