#23925-a-JKK
**2007 SD 53**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

| | |
|---|---|
| PAMELA MCDOWELL, | Plaintiff and Appellant, |
| v. | |
| CITICORP U.S.A.; CITIBANK OF SOUTH DAKOTA, N.A.; | |
| CRAWFORD & COMPANY, | Defendants and Appellees, |
| and | |
| WAYNE KINONEN, | Defendant. |

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE GENE PAUL KEAN
Judge

\* \* \* \*

| | |
|---|---|
| CHET GROSCLOSE Sioux Falls, South Dakota | Attorney for plaintiff and appellant. |
| LON J. KOURI SCOTT R. SWIER of May & Johnson, P.C. Sioux Falls, South Dakota | Attorneys for appellees Citicorp, USA & Citibank of SD, N.A. |
| STEVEN W. SANFORD MICHAEL A. HENDERSON of Cadwell, Sanford, Deibert & Garry Sioux Falls, South Dakota | Attorneys for appellee Crawford & Company. |

\* \* \* \*

ARGUED ON OCTOBER 4, 2006

OPINION FILED **06/06/07**

#23925

KONENKAMP, Justice

[¶1.]    Pamela McDowell suffered a work-related injury while employed at Citibank of South Dakota. She was paid workers' compensation benefits and eventually entered into a settlement agreement. The agreement required Citibank's insurer to pay all future necessary and reasonable medical expenses causally related to her injury. McDowell later brought suit against Citibank and other defendants alleging that they acted in bad faith by unreasonably delaying payment of her medical bills. Defendants moved for summary judgment. After two hearings, the circuit court granted defendants' motion. McDowell appeals, and we affirm.

### Background

[¶2.]    In 1991, McDowell suffered a work-related injury while employed at Citibank of South Dakota, a subsidiary of Citigroup, Inc. Her job required her to use her hands in a repetitive manner, and, after some time, she began to experience shooting pains up both her arms. When the pain increased, she visited Dr. Walter Carlson, an orthopedic surgeon. He performed carpal tunnel surgery on both her wrists. After the surgery, her pain did not subside, and Dr. Carlson referred her to the Mayo Clinic in Minnesota. There, doctors diagnosed her as having a dorsal sensory neuropathy condition of the radial nerve. They recommended that she obtain treatment and not return to work at that time.

[¶3.]    Citibank's workers' compensation insurance carrier at the time of McDowell's injury was Planet Insurance Company, a division of Reliance Insurance Company. After McDowell was injured, Planet paid the medical bills related to her

injury. In January 1993, McDowell filed a petition with the Department of Labor (Department), alleging that as a result of her injury she had become permanently and totally disabled and was entitled to workers' compensation benefits. In 1995, the parties began discussing the possibility of a settlement, and, on March 14, 1996, McDowell, Citibank, and Planet entered into a "Compromise Agreement." McDowell accepted a lump sum payment and released all past, existing, and future claims against Citibank and Planet. They, in return, agreed to pay her future necessary and reasonable medical expenses connected to her work injury. The Department later approved the settlement.

[¶4.]        Under a contractual agreement with Planet, Crawford & Company was responsible for administering all the workers' compensation claims for Citibank. Thus, Crawford was responsible for managing McDowell's workers' compensation file and processing and paying claims submitted by her medical care providers. According to McDowell, before the settlement agreement, defendants Crawford and Citibank unreasonably delayed payment of her medical bills. She recognized, however, that because of the settlement agreement she had waived any potential bad faith claims relating to pre-settlement conduct. Nonetheless, she alleged that after the settlement defendants continued to unreasonably delay payment of her medical bills. She maintained that because defendants were not paying her bills, her medical care providers started demanding payment from her personally. She also claimed that she received letters from a collection agency demanding payment, and because of the unreasonable delays, the Mayo Clinic refused to continue treating her until she resolved her delinquent bills.

[¶5.]        On February 11, 2000, McDowell petitioned the Department to reopen her settlement agreement.  One allegation in her petition was that defendants "exhibited a pattern of consistently paying outstanding medical bills in an untimely fashion or not paying them at all."  She sought to "compel Employer/Insurer to pay all outstanding medical bills."[1]  In March 2000, McDowell's attorney sent a letter to defendants informing them that because McDowell's bills remained unpaid "we are looking at a potential bad faith action for failure to pay."

[¶6.]        In March 2003, McDowell brought suit in circuit court against Citicorp USA, Inc., Citibank of South Dakota, N.A., Crawford & Company, and Wayne Kinonen (a Crawford representative) averring bad faith refusal to pay her bills for necessary health care, negligence, negligent infliction of emotional distress, vexatious denial of claim, and entitlement to punitive damages.  In her complaint, she alleged that defendants delayed payment on bills from Avera McKennan Hospital and Anesthesiology Associates for care on August 23, 1999, and on a bill from the Mayo Clinic years earlier.[2]  She amended her complaint in August 2004, to include causes of action for fraud and deceit, intentional infliction of emotional distress, and intentional interference with business relations.

---

1.      Her petition to reopen was denied by the Department.  The circuit court affirmed the Department's decision, and McDowell appealed to this Court. Today we also affirm that decision, in a separate opinion.

2.      Her complaint mistakenly dated her August 23, 1999 bill as August 23, 2000. In her brief to this Court, however, she noted that the proper date is August 23, 1999.

[¶7.]      After discovery was conducted, defendants jointly moved for summary judgment. Following the hearing, but while the motion for summary judgment was still pending, defendants learned that when McDowell and her husband filed for voluntary Chapter 7 Bankruptcy in October 2000, they did not list the present lawsuit on their schedule of potential assets. Nor did they list the healthcare providers as creditors. As a result, defendants filed a supplemental appendix in support of their motion for summary judgment and argued that McDowell should be judicially estopped from now using the pre-bankruptcy conduct in support of her claims. Defendants requested that the circuit court take judicial notice of the bankruptcy proceeding and related filings. At the hearing, McDowell conceded that there could be no cause of action founded on the bills preceding the bankruptcy filing. However, she argued that the bills should nevertheless be admissible as evidence.

[¶8.]      McDowell served her second amended complaint in May 2005. She again alleged the defendants' pre-bankruptcy bad faith. However, she acknowledged that such conduct was "not now actionable by [her]." Thus, she asserted that "[a]fter October 1, 2000 the defendants persisted in the prior practice of delaying unreasonably the payment for necessary medical services. . . ." She identified specific bills that she believed supported her claim for bad faith.[3] She

---

3.      Her second amended complaint alleged that defendants unreasonably delayed payment for "services provided by Avera McKennan Hospital and Anesthesiology Associates on October 6, 2000, May 23-26, 2001, October 17-20, 2001, January 25-28, 2002, May 15-18, 2002, November 22-25, 2002, March 20-23, 2003, June 9-12, 2003, August 18-21, 2003, November 6-9, 2003, January 30-February 2, 2004, April 6-9, 2004 and July 30, 2005[.]"

also asserted additional causes of action for both intentional and negligent infliction of emotional distress, and entitlement to punitive damages.[4]

[¶9.]       In June 2005, the circuit court granted partial summary judgment, specifically precluding McDowell from pursuing her bad faith claim based on the pre-bankruptcy events. The court ruled that because she filed a petition to reopen her settlement agreement in February 2000, in part because of defendants' failure to timely pay bills, and because in March 2000, her counsel sent correspondence to defendants warning of the possibility of a bad faith claim, she was aware of her potential lawsuit when she filed for bankruptcy in October 2000. The court found that she failed to list the present lawsuit as a potential asset on her bankruptcy schedule and "did not bring any claim to the attention of the trustee, nor did she attempt to amend the schedules." Therefore, it ruled that the doctrine of judicial estoppel precluded her "from asserting any claims against these defendants for events prior to January 17, 2001." Moreover, the circuit court held that because she was judicially estopped from pursuing a claim based on pre-bankruptcy conduct, it was as though the facts occurring pre-bankruptcy legally did not exist. Consequently, McDowell was also barred from using pre-bankruptcy facts as evidence in support of her present claim.

[¶10.]      In October 2005, the court issued a letter decision granting defendants' motion for summary judgment on McDowell's claims for bad faith, intentional and negligent infliction of emotional distress, and punitive damages. It noted that

---

4.      After she filed her second amended complaint, Wayne Kinonen was no longer a named defendant.

McDowell "continues to urge that she was denied prompt payment of her medical bills thereby supporting her claim of damages."[5] The court reiterated that the doctrine of judicial estoppel precluded it from considering conduct before the bankruptcy, and therefore, it only examined the specific instances of unreasonable post-bankruptcy delay alleged by McDowell in her second amended complaint.[6]

[¶11.] According to the court, even assuming, as alleged by McDowell, that "defendants had a duty to perform a reasonable investigation into [her] health care needs and to provide for the health care by promptly paying reasonable charges of health care providers," she failed to show that the payments made by defendants were untimely or unreasonably delayed. Defendants, the court found, while admitting that medical services were provided to McDowell, denied the length of

---

5. The circuit court noted that in "an apparent attempt to show causation," McDowell submitted the affidavit of Dr. Susan Eleeson. Dr. Eleeson had been treating McDowell since January 18, 2000, for clinical depression. Dr. Eleeson asserted that the defendants' "patterns of delay and denial of workers' compensation benefits, engender in [McDowell] feelings of abject hopelessness." According to Dr. Eleeson, because of the "irresponsible and abusive way [she] has been and is being treated by the defendants in this case" her depression has been difficult to manage. In its ruling, the circuit court held that Dr. Eleeson's "affidavit is conclusory in content" and "contains no facts which are [at] all germane to this proceeding." Further, it found that "[p]hrases appear throughout the affidavit which are only opinions and are not facts," and therefore, it "is wholly lacking in providing or supplying insights for the court's benefit."

6. The circuit court noted that on October 3, 2001, Reliance Insurance Company, Planet's parent company, was declared insolvent and placed in liquidation and the South Dakota Guaranty Association assumed responsibility for processing McDowell's workers' compensation claims. Therefore, defendants, including Crawford, were relieved of responsibility for processing and paying of McDowell's claims from October 2, 2001, until the Guaranty Association transferred the claim back to defendants. In October

(continued . . .)

delay with "specific factual references[.]"  McDowell, on the other hand, failed to contradict defendants' responses, and instead relied on her pleadings and conclusions.  As a result, the court granted defendants' motion for summary judgment on McDowell's claim for bad faith.

[¶12.]      The court also granted defendant's motion for summary judgment on McDowell's claims of fraud and deceit and interference with business relations.  McDowell does not challenge those rulings on appeal.  The claims for intentional and negligent infliction of emotional distress were dismissed because the court found that there was no showing that the "defendants were engaged in extreme and outrageous conduct."  Further, the court dismissed her claim for punitive damages, because such damages are dependent on an award of compensatory damages.

[¶13.]      McDowell appeals claiming that material issues of fact exist on whether defendants' conduct in delaying payment of her medical services constitutes bad faith, intentional and negligent infliction of emotional distress, and entitlement to punitive damages.

### Standard of Review

[¶14.]      "When reviewing a grant of summary judgment, we decide only whether there were genuine issues of material fact and whether the law was correctly applied."  Heib v. Lehrkamp, 2005 SD 98, ¶19, 704 NW2d 875, 882 (citing SDCL 15-6-56(c); Keystone Plaza Condominiums Ass'n v. Eastep, 2004 SD 28, ¶8,

_____

(. . . continued)
        2002, Citibank became self insured under SDCL 58-29A-71(1) and Crawford
        resumed its role as the administrator for McDowell's claims.

676 NW2d 842, 846). "We view the evidence in a light most favorable to the nonmoving party." Toben v. Jeske, 2006 SD 57, ¶9, 718 NW2d 32, 35 (citing Wilson v. Great Northern Ry. Co., 83 SD 207, 212, 157 NW2d 19, 21 (1968)). The moving party has the burden of proving "the absence of any genuine issue of material fact and entitlement to judgment as a matter of law." Yarcheski v. Reiner, 2003 SD 108, ¶15, 669 NW2d 487, 493 (citing Dept. of Rev. v. Thiewes, 448 NW2d 1, 2 (SD 1989)).

**Analysis and Decision**

[¶15.] In *Champion v. U.S. Fidelity & Guar. Co.*, 399 NW2d 320, 324 (SD 1987), we recognized a cause of action for bad faith arising out of a workers' compensation claim. To prevail, a claimant must demonstrate that the claim was denied with knowledge of the absence of a reasonable basis for the denial or in reckless disregard of whether a reasonable basis existed. *Id.* In this case, McDowell's claim for bad faith is not based on a denial of benefits. Rather, she contends that defendants acted in bad faith by unreasonably delaying payment for her necessary medical care.

[¶16.] While this case does not involve a *per se* denial of benefits, the Eighth Circuit Court of Appeals has recognized that a "[d]enial of benefits may be inferred from the insurer's failure to process or pay a claim. . . ." *See* Kirchoff v. Am. Cas. Co. of Reading P.A., 997 F2d 401, 405 (8thCir 1993). Here, defendants had a duty to pay McDowell's "future reasonable and necessary medical benefits directly and causally related to her injuries" in accordance with the terms of the parties' settlement agreement and in compliance with the applicable workers' compensation laws. Therefore, if defendants unreasonably delayed payment of her necessary

medical bills with an absence of a reasonable basis for the delay, and McDowell suffered a compensable loss as a result, then such conduct might support a claim for bad faith. *See id.* However, the mere existence of a delay between the date she received medical care and the date the bill was finally paid cannot in and of itself give rise to a bad faith cause of action. Rather, McDowell must demonstrate that there was an absence of a reasonable basis for the delay and defendants' knowledge, or reckless disregard, of the absence of a reasonable basis. *See Champion*, 399 NW2d at 324.

[¶17.]         In support of her bad faith claim, McDowell identifies three delayed payments that she contends create a question of fact on whether defendants' conduct constitutes bad faith. The first delayed payment was for care received at Avera McKennan Hospital by Anesthesiology Associates on March 20, 2003. According to McDowell, defendants did not pay this bill until November 13, 2003, 226 days later. The second delayed payment, on a bill from Avera McKennan, was for care provided June 9 through June 12, 2003. She claims the bill was not finally paid until November 13, 2003, 145 days later. The third delayed payment, also on a bill from Avera McKennan, was for care provided on April 6, 2004, and she asserts that it was not paid by defendants until September 17, 2004, 161 days later.

[¶18.]         Defendants do not challenge the existence of McDowell's bills or their obligation to pay them; they dispute the delay lengths McDowell averred. Defendants provided specific and supported responses that explain and lessen the

length of delay for each bill.[7]  In regard to the first bill, which McDowell asserts that 226 days passed before it was paid, defendants indicate that the bill was received by them on March 29, 2003, submitted to audit thereafter, with a check issued on July 22, 2003, for $147.36, and a final payment on November 13, 2003, for $68.58.  The second bill, from November 6, 2003, which McDowell asserts was not paid until 145 days later, was, according to defendants, actually paid on December 4, 2003.  Finally, defendants claim that the last bill from April 6, 2004, was not paid on September 17, 2004, as McDowell alleges, but on May 21, 2004.

[¶19.]      McDowell does not attempt by affidavit or other evidence to contradict defendants' itemized responses on payment of these bills.  Instead, she maintains that defendants have a duty to promptly and expeditiously pay her medical bills and whether they acted in bad faith should be a question for the finder of fact.[8]  She further asserts that defendants' bad faith conduct is more evident when their actions are viewed in light of what occurred before her bankruptcy.  Although she

---

7.    As support for their responses to McDowell's request for admissions, defendants cite certain "Bates" numbers and "Navigator Reports."  This information was not provided in the record on appeal.  Nonetheless, as the circuit court recognized, McDowell never challenged or contradicted defendants' contentions or information.

8.    The circuit court concluded that "with specific checks and audit references" defendants disputed the length of delays alleged by McDowell.  Then, as the court noted,

> McDowell never contradicts the response, but instead relies upon her pleadings and conclusions.  Simply stated, the allegations of excessive delays in payment have been denied by these defendants and supported with specific factual references.  McDowell has not produced any evidence to contradict the responses.

agrees that the doctrine of judicial estoppel precludes her from using the pre-bankruptcy conduct as the basis of her claim, she contends that what happened before her bankruptcy is admissible as "other acts" evidence.[9] She seeks to use this pre-bankruptcy evidence of delayed payments to prove defendants' continuing failure to timely pay her bills extending from before her bankruptcy. *See* SDCL 19-12-5 (Rule 404(b)); *see also* State v. Wright, 1999 SD 50, ¶14, 593 NW2d 792, 798-99.

[¶20.] Rule 404(b) permits admission of other acts evidence to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." SDCL 19-12-5 (Rule 404(b)). Generally, the process of deciding the admissibility of Rule 404(b) evidence can be broken down into steps. Initially, the proponent must show the relevance of the "other acts" evidence. *Wright*, 1999 SD 50, ¶14, 593 NW2d at 798. Then, if the evidence is relevant, the court must weigh the probative value against the danger of unfair prejudice. *Id.* The opponent has the burden of establishing that the danger of unfair prejudice substantially outweighs the probative value. *Id.* ¶16 (citations omitted). Last, if the evidence is admitted, the court should instruct the jury on the limited purpose for which the jury may consider the evidence. SDCL 19-9-12; *Wright*, 1999 SD 50, ¶17 n6, 593 NW2d at 800 n6.

[¶21.] Even if we were to declare the pre-bankruptcy acts admissible under Rule 404(b) as evidence of "intent," "knowledge," "identity," or "absence of mistake or accident," as McDowell argues, she must still have sufficient evidence of

---

9. McDowell did not appeal the court's decision regarding judicial estoppel.

defendants' post-bankruptcy conduct to support her post-bankruptcy bad faith claim. Indeed, McDowell's counsel conceded in oral argument that if her post-bankruptcy delay claims are insufficient in themselves to establish bad faith, then the pre-bankruptcy "other acts" evidence "may very well be" irrelevant. We agree. Although "other acts" under Rule 404(b) can constitute substantive evidence of "intent," "knowledge," "identity," or "absence of mistake or accident," they are not substantive evidence of bad faith conduct itself. United States v. Abboud, 438 F3d 554, 583 n8 (6thCir 2006) (404(b) other acts can be substantive evidence of intent, lack of mistake, and motive). McDowell must have evidence of bad faith conduct to support her present cause of action. Only then could the other acts evidence become relevant. As McDowell herself asserts, the present case does not deal with her cause of action for defendants' alleged bad faith occurring before January 17, 2001.[10]

[¶22.] "The burden is on the moving party to clearly show an absence of any genuine issue of material fact and an entitlement to judgment as a matter of law." *Estate of* Elliott, 1999 SD 57, ¶15, 594 NW2d 707, 710 (citing *Wilson*, 83 SD at 212, 157 NW2d at 21). On the other hand, "[t]he party opposing a motion for summary judgment must be diligent in resisting the motion, and mere general allegations and denials which do not set forth specific facts will not prevent issuance of a judgment." Breen v. Dakota Gear & Joint Co., Inc., 433 NW2d 221, 223 (SD 1988) (citing

---

10. Because the issue is not before us in this appeal, we make no determination on McDowell's pre-bankruptcy bad faith claim, which she is now attempting to revive in circuit court.

Hughes-Johnson Co., Inc. v. Dakota Midland Hosp., 86 SD 361, 364, 195 NW2d 519, 521 (1972)). *See also* State Auto Ins. Companies v. B.N.C., 2005 SD 89, ¶6, 702 NW2d 379, 382. "[T]he nonmoving party 'must substantiate [her] allegations with sufficient probative evidence that would permit a finding in [her] favor on more than mere speculation, conjecture, or fantasy.'" *Elliott*, 1999 SD 57, ¶16, 594 NW2d at 710 (quoting Himrich v. Carpenter, 1997 SD 116, ¶18, 569 NW2d 568, 573 (quoting Moody v. St. Charles County, 23 F3d 1410, 1412 (8thCir 1994))).

[¶23.]     Although McDowell identifies three specific bills mentioned above in support of her claim, she has failed to substantiate her allegation that defendants delayed payment without a reasonable basis and with knowledge of or in reckless disregard of the absence of a reasonable basis.  She has not contradicted defendants' responses that lessen and explain the length of the delays.  And she makes no claim that during the time these three bills were unpaid her medical providers refused to continue treating her.

[¶24.]     Based on our review of the record, we conclude that McDowell's bad faith claim is premised on the fact that a certain number of days passed from the date she received treatment and the date the bill was finally paid.  This, however, does not alone create a genuine issue of material fact on whether defendants unreasonably delayed payment of her medical bills, or that they did so with an absence of a reasonable basis for the delay.  Thus, summary judgment was properly granted.

[¶25.]     McDowell also argues that a genuine issue of material fact exists precluding summary judgment on her claim of intentional infliction of emotional

distress.[11] To prove the tort of intentional infliction of emotional distress, McDowell must establish "that the defendant (1) by extreme and outrageous conduct, (2) acted intentionally or recklessly to cause the plaintiff severe emotional distress, (3) which conduct in fact caused the plaintiff severe distress, and (4) the plaintiff suffered an extreme, disabling emotional response to the defendant's conduct." *See* Harris v. Jefferson Partners, L.P., 2002 SD 132, ¶11, 653 NW2d 496, 500 (citing Henry v. Henry, 2000 SD 4, ¶6, 604 NW2d 285, 288); *see also* Gilchrist v. Trail King Ind., Inc., 2000 SD 67, ¶26, 612 NW2d 10, 17 (citation omitted). Whether the defendants' conduct was extreme and outrageous is initially a question for the circuit court. *Harris*, 2002 SD 132, ¶11, 653 NW2d at 500 (citing Richardson v. East River Elec. Power Coop., 531 NW2d 23, 27 (SD 1995)).

[¶26.]     McDowell contends that because defendants were aware of her "susceptibility to emotional distress" and knew that their reckless conduct would likely result in emotional distress, there is a genuine issue of material fact supporting her claim that by unreasonably delaying payment of her medical bills defendants' conduct was extreme and outrageous. However, even taking into account her particular susceptibility to emotional distress, we cannot say that the manner in which defendants processed and paid her medical bills was "'so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.'" *Trail King*, 2000 SD 67,

---

11.     Although in her issue statement to this Court she contends that summary judgment was improper on her claim of negligent infliction of emotional distress, she makes no argument in support of this contention. Thus, it is waived.

¶26, 612 NW2d at 17 (citations omitted). Therefore, summary judgment was properly granted. Also, because no causes of action remain, McDowell's issue regarding punitive damages is moot.

[¶27.]     Affirmed.

[¶28.]     GILBERTSON, Chief Justice, and SABERS, ZINTER, and MEIERHENRY, Justices, concur.