#24288-a-SLZ

**2008 SD 28**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

TED E. DELKA,                                                    Plaintiff and Appellant,

     v.

CONTINENTAL CASUALTY COMPANY,          Defendant and Appellee,

    and

GREENTREE TRANSPORTATION CO.,
and CHARLENE BURD,                                      Defendants.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE FOURTH JUDICIAL CIRCUIT
LAWRENCE COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE RANDALL L. MACY
Judge

\* \* \* \*

SARA FRANKENSTEIN
G. VERNE GOODSELL of
Gunderson, Palmer, Goodsell & Nelson, LLP
Rapid City, South Dakota

W. JASON GROVES of
Groves Law Office                                 Attorneys for plaintiff
Rapid City, South Dakota                     and appellant.

RONALD J. HALL of
Hall Law Firm                                        Attorney for defendant
Aberdeen, South Dakota                       and appellee.

\* \* \* \*

ARGUED ON APRIL 25, 2007

OPINION FILED **04/02/08**

#24288

ZINTER, Justice

[¶1.]        Following an occupational disability, Ted E. Delka commenced this action against Greentree Transportation Company (Greentree); one of Greentree's employees, Charlene Burd (Burd); and Continental Casualty Company (CCC). Delka pleaded nine causes of action arising out of his enrollment under Greentree's group occupational accident insurance policy that Greentree had purchased from CCC for Greentree's employees and independent contractors.  The circuit court granted summary judgment dismissing CCC.  Delka appeals.  We affirm.

[¶2.]        In 1999, Delka, a trucker residing in South Dakota, began working as an independent contractor for Greentree, a Pennsylvania company.  Greentree required its independent contractors to have workers' compensation insurance or occupational accident insurance (OAI) as a condition of employment.  Burd advised Delka that group OAI was available through Greentree, and allegedly stated that it was "just like" workers' compensation insurance.  Delka did not have either type of insurance, and he enrolled under Greentree's group OAI policy with CCC.  Upon enrollment, Delka received an insurance card, but alleges that he received no other information about the policy.

[¶3.]        CCC is in the business of providing OAI.  CCC employed Ameriplan Benefit Corporation (Ameriplan) as CCC's underwriting manager.  Greentree had applied to CCC for a group OAI policy.  Southern States Insurance Agency (Southern States) acted as Greentree's insurance agent or broker in the transaction. CCC issued the group policy to Greentree as the policyholder.  Greentree purchased and received delivery of the policy in Pennsylvania.  Therefore, the parties agree

-1-

that Pennsylvania law governs the relationship between CCC as the insurer, Greentree as the policyholder, and Delka as an insured under the group policy. The parties further agree that, pursuant to their employment agreement, Pennsylvania law governs the relationship between Greentree and Delka.

[¶4.]        Greentree's contract of insurance with CCC required Greentree, not Delka, to pay the monthly premiums for the OAI. The premium was based upon the total number of independent contractors covered each month. Greentree's cost of insurance for Delka was $92 per month. Greentree, however, deducted $125 per month from Delka's checks, which was $33 per month (a total of $396) more than Greentree's cost of OAI during the time Delka was employed. Allegedly, $18 of the monthly excess was deducted for a "contingent liability policy" that covered Greentree, and $15 was deducted for "Greentree's losses" on independent contractor insurance. Delka contends that he had no knowledge of these additional premium deductions and alleges that he was being overcharged.[1]

[¶5.]        In 2000, Delka was involved in a work-related accident that rendered him unemployable. After his accident, Delka had his first contact with CCC: Delka received copies of his application and CCC's policy. CCC subsequently paid Delka all disability and medical benefits afforded under Greentree's OAI policy. Although there is no dispute that CCC fully complied with the terms of the group policy, the policy benefits were limited to five years, and Delka alleges that he is permanently

---

1.    Allegedly, another $35 was deducted for "bobtail deadhead" insurance, but the actual premium for that insurance was only $18. CCC did not provide the "bobtail deadhead" insurance: it was provided to Greentree by another company.

disabled and will need further medical care for the rest of his life. Delka therefore contends that the OAI is insufficient to cover his disability and that Greentree and CCC are liable for misleading him in believing that OAI was just like workers' compensation insurance.

[¶6.]    Delka brought this suit on causes of action alleging deceit, bad faith, violation of South Dakota's Unfair Trade Practices Act, violation of Pennsylvania's Unfair Insurance Practices Act, negligent misrepresentation, breach of fiduciary duty, conversion, fraud and concealment, and negligence. The gravamen of all claims is that the OAI was misrepresented as being "just like" workers' compensation insurance and Delka was overcharged. With respect to CCC and vicarious liability, Delka alleges that Greentree was CCC's agent in the group insurance transactions and therefore, CCC is vicariously liable for Greentree's acts and omissions. With respect to direct liability, Delka alleges that CCC misrepresented certain facts to Delka, had knowledge of overcharging for OAI, and breached duties it owed to Delka arising from obligations independent of the group insurance contract.

[¶7.]    The circuit court granted summary judgment dismissing CCC on all claims. With respect to vicarious liability, the circuit court concluded that Greentree and Burd could not, as a matter of Pennsylvania law, be deemed CCC's agents in enrollment and premium transactions involving group insurance. With respect to direct liability, the circuit court observed that Delka failed to assert that CCC made any representations to Delka prior to his accident. The court also

concluded that CCC owed Delka no duty independent of its obligations under the group insurance contract.[2]

[¶8.]     Delka appeals raising the following issues:

1.  Whether Greentree was CCC's agent in the OAI group insurance transactions.

2.  Whether CCC made misrepresentations or owed any duties to Delka independent of CCC's obligations under the policy.

We review these issues under our familiar standard of review:

> Summary judgment is authorized if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. We will affirm only when there are no genuine issues of material fact and the legal questions have been correctly decided. All reasonable inferences drawn from the facts must be viewed in favor of the non-moving party. The burden is on the moving party to clearly show an absence of any genuine issue of material fact and an entitlement to judgment as a matter of law. Summary judgment will be affirmed if there exists any basis which would support the trial court's ruling.

Schwaiger v. Avera Queen of Peace Health Serv., 2006 SD 44, ¶7, 714 NW2d 874, 877.

*Agency*

[¶9.]     Delka contends that Greentree acted as CCC's agent in the marketing and servicing of the group insurance and therefore CCC is vicariously liable for

---

2.  The circuit court noted that there was sufficient evidence at the summary judgment stage to conclude that CCC may or should have had knowledge that Greentree was charging more than its cost of insurance. The circuit court concluded, however, that absent an agency relationship, that knowledge was not material because CCC had no other duty to Delka other than CCC's duties under the contract.

Greentree's alleged overcharging and misrepresentations. Pennsylvania's law on agency with regard to group insurance is well settled. The United States Supreme Court, applying Pennsylvania law, concluded:

> When procuring [a group] policy, obtaining applications of employees, taking payroll deduction orders, reporting changes in the insured group, paying premiums, and, generally, in doing whatever may serve to obtain and keep the insurance in force, employers [such as Greentree] act not as agents of the insurer [such as CCC], but for their employees [such as Delka] or for themselves.

Boseman v. Connecticut Gen. Life Ins. Co., 301 US 196, 204-05, 57 SCt 686, 690, 81 LEd 1036 (1937) (citations omitted). The state and federal courts of Pennsylvania have also concluded that employers are not the agent of the insurer in group insurance transactions. *See* Henning v. Metro. Life Ins. Co., 546 FSupp 442, 446 (MDPa 1982); Aetna Life Ins. Co. v. Messier, 173 FSupp 90, 96 (MDPa 1959); Layman v. Cont'l Assur. Co., 416 Pa 155, 160, 205 A2d 93, 95-96 (1964); Hanaieff v. Equitable Life Assur. Soc. of U.S., 371 Pa 560, 564, 92 A2d 202, 204 (1952); McFadden v. Equitable Life Assur. Soc., 351 Pa 570, 575, 41 A2d 624, 626 (1945); Smith v. CNA Ins., 319 PaSuper 449, 462 n9, 466 A2d 629, 636 n9 (1983).

[¶10.] In *Hanaieff*, the Pennsylvania Supreme Court acknowledged the split of authority on this agency question; nevertheless, it adopted the majority view holding that the employer acts as the agent of the employee, not the insurer:

> [W]hile it is true that there is a diversity of opinion among the several jurisdictions as to whether, in the case of such group insurance policies, the employer occupies the role of agent of the employees or of the insurer, in our own State, as in the Supreme Court of the United States, this question has been definitely resolved against plaintiff's contention.

371 Pa at 564, 92 A2d at 204. In *Aetna Life* the federal district court explained that the purpose of group insurance was to supply low-cost insurance for the protection of employees,[3] and:

> In procuring such [group] insurance, obtaining applications, taking payroll deductions, and paying premiums, the employer acts as agent for the employees and for themselves . . . thus rendering their employees a service and promoting industrial goodwill.

173 FSupp at 96 (citations omitted). Therefore, under Pennsylvania law,[4] Greentree, the employer/policyholder of the group insurance policy, was not the agent of CCC in the group insurance transactions involving Delka.

[¶11.] Delka, however, citing 1994 Pennsylvania insurance regulations, argues that because Greentree explained coverage, enrolled applicants, collected premiums, and was responsible for the delivery of certificates of insurance, we should recognize Greentree as CCC's agent. *See* 31 Pa. Code §§ 37.1, 37.11, 37.17 (defining these types of activities as those that are performed by an agent). Although we may assume without deciding that Greentree's insurance activities could have fallen within these regulatory definitions, Delka still may not prevail

---

3.  One treatise has observed that group insurance policies provide affordable insurance coverage to a pool of people through a common central entity, like an employer. 1A Lee R. Russ, et al., Couch on Insurance 3D § 7.1 (Clark Broadman Callaghan 1995). One of the reasons group policies remain an inexpensive source of insurance is because the employer performs much of the costly administrative process, presumably for the benefit of its employee. *Id.*

4.  We also acknowledge the split of authority on this issue. Although Delka urges us to adopt the minority view applied in other jurisdictions, under the parties' choice of law agreement, we apply Pennsylvania law.

#24288

because the authority for the regulations has been repealed.[5] The "purpose of [those regulations was] to implement sections 601 -- 639 of the act (40 [Pa. Cons. Stat.] §§ 231-279), by setting forth requirements and standards for the operation of a single licensing system for insurance agents and brokers in [Pennsylvania]." 31 Pa. Code § 37.2. The relevant enabling statutes (40 Pa. Cons. Stat. §§ 231-240, 251-282) for those regulations were, however, repealed.[6] *See* 40 Pa. Cons. Stat. §§ 231-240, 251-282 (*repealed by* Dec. 6, 2002 P.L. 1183, No. 147 § 1) (repealing statutes which defined the broker/agent distinction). Moreover, under the replacement statutes, the prior licensing definitions of "agents" and "brokers" were abandoned in favor of a single category called "insurance producers." *See* 40 Pa. Cons. Stat. §§ 310.1-310.14. And, under this superseding statutory definition of "insurance producers," the types of group insurance activities upon which Delka relies are

---

5.  Even if the regulations were effective, the preexisting statutes, which provide authority for the regulations cited by Delka, applied to the requirements for licensure and certification rather than the agent's duty to potential enrollees of a group insurance policy. *See* 40 Pa. Cons. Stat. § 232 (*repealed by* Dec. 6, 2002 P.L. 1183, No. 147 § 1). *See also* 31 Pa. Code § 37.2 (stating the regulations "set[] forth requirements and standards for the operation of a single *licensing system*") (emphasis added); and 31 Pa. Code §§ 37.1-37.84 (setting forth state requirements and fees for certification and licensure of insurance agents and brokers).

6.  Although the Pennsylvania Legislature did not repeal 40 Pa. Cons. Stat. §§ 241-246; those statutes govern "the termination of certain agency contracts in effect for more than four years." Faust Agency, Inc. v. Pennsylvania Ins. Dept., 734 A2d 932, 933 n2 (PaCommwCt 1999); *see also* Leach Agency, Inc. v. Foster, 133 PaCmwlth 425, 426, 576 A2d 1156, 1156 (PaCmmwCt 1990).

excluded from the definition of insurance producer. *See* 40 Pa. Cons. Stat. § 310.3(b).[7]

[¶12.]    We finally note that, notwithstanding Delka's administrative regulation argument, the two post-1994 Pennsylvania decisions on this issue continue to follow the rule that there is no agency relationship between employers that provide group insurance benefits and the insurers that sell the policies to the employers. *See* Schurich v. Principal Fin. Group, No CivA 304CV2074, 2005 WL 1154490, at *4 (MDPa 2005) (holding that employer does not act as insurer's agent

---

7.    40 Pa. Cons. Stat. § 310.3 provides in relevant part:

> (a) General rule.--Except as provided in subsection (b), a person shall not sell, solicit or negotiate a contract of insurance in this Commonwealth unless the person is licensed as an insurance producer for the line of authority under which the contract is issued.
> (b) Exceptions.--The following persons shall not be insurance producers for purposes of this act:
> ***
> (4) A person that does any of the following, provided no commission is paid for the services:
> (i) Secures and furnishes written information for the purpose of group life insurance, group property and casualty insurance, group annuities, group or blanket accident and health insurance.
> (ii) Performs administrative services related to the enrollment of individuals under plans.
> (iii) Issues certificates under plans or otherwise assists in administering plans.
> (iv) Performs administrative services related to mass marketed property and casualty insurance.
> (v) Provides risk management services to a business entity.
> (vi) Performs administrative functions, provides clerical support or enrolls renters on behalf of the rental company which offers insurance coverages in connection with and incidental to the rental of motor vehicles.

with respect to group insurance); McBride v. Hartford Life & Accident Ins. Co., Civ. No. 05-6172, 2007 US Dist. LEXIS 169171, at *3 (EDPa Jan 29, 2007) (same). We therefore conclude that, under Pennsylvania law involving group insurance policies, Greentree was not CCC's agent and CCC cannot be vicariously liable for Greentree's alleged acts and omissions related to the group OAI transactions.

*Direct Liability*

*Negligence and Bad Faith*

[¶13.]     Greentree purchased and was the policyholder of the OAI policy. CCC and Delka had no relationship until Delka's enrollment under Greentree's policy. CCC and Delka also had no communications until after Delka's accident, at which time CCC provided the policy information and paid all benefits required by the contract. Because CCC fully performed its contractual obligations, there was no contractual duty running from CCC to Delka that would support Delka's claim for negligence or bad faith.[8]

[¶14.]     Delka, however, argues that CCC is directly liable on duties independent of CCC's obligations under the insurance contract. Delka contends that duties may be premised upon two experts who opined that CCC breached the

---

8.     Delka does assert a contractual duty to audit and examine Greentree's records for overcharging employees. Delka also contends that, as CCC's underwriting manager, Ameriplan held itself out to provide marketing services, and those marketing services should have better informed Delka of the nature of OAI. Those contractual provisions, however, only gave CCC "the right to inspect and audit" and the right to use Ameriplan's other services. We do not view *CCC's rights* under its contract with Ameriplan as inuring for the benefit of Delka. CCC's contractual rights were intended for the protection and benefit of CCC rather than potential enrollees like Delka.

duties of good faith and insurance standards of care in its marketing of the group insurance. Those experts opined that CCC had a duty to ensure that Greentree marketed the OAI with properly trained and licensed insurance agents, who would "assure [that CCC's] insureds understood what their policy provide[d] and at what cost." With two exceptions that we do address below, Delka has not cited Pennsylvania law requiring a duty under these theories. Because both parties rely primarily on South Dakota law establishing the existence of a duty, we generally limit our review to those authorities.[9]

[¶15.]    Delka points out that we have recognized that a duty may arise independent of a contract.

> "[L]egal duty . . . may spring from extraneous circumstances, not constituting elements of the contract as such, although connected with and dependent upon it, and born of that wider range of legal duty which is due from every man to his fellow, to respect his rights of property and person, and refrain from invading them by force or fraud."

Smith v. Weber, 70 SD 232, 236, 16 NW2d 537, 539 (1944) (quoting Rich v. New York Cent. & H. R. R. R. Co., 87 NY 382 (NY 1882)). "Whether a duty exists is a question of law, fully reviewable by this Court on appeal." Fisher Sand & Gravel

---

9.    Delka alleges that CCC breached a "public policy duty" in its dealings with Delka, including a public policy duty to inform insureds of the cost of the premium. Delka, however, only cites authority for the general proposition that duties may arise from public policy. He cites no authority supporting the proposition that there is a public policy duty on the part of a group insurer regarding its policyholder's marketing and premium collection practices relating to enrollees. Therefore, although we address the marketing and premium collection duties that are supported by authority, we do not address any amorphous public policy duty.

Co. v. State, 1997 SD 8, ¶12, 558 NW2d 864, 867 (citing Tipton v. Town of Tabor, 538 NW2d 783, 785 (SD 1995)).

[¶16.]     We have recognized that a professional duty may exist in the context of providing insurance services. *See* Mark, Inc. v. Maguire Ins. Agency, Inc., 518 NW2d 227, 229-30 (SD 1994) (acknowledging liability, but finding no factual basis for liability in that case). In considering whether a duty exists to provide professional services in a manner that does not cause economic damages to foreseeable third parties, this Court has not required privity of contract. Mid-Western Elec., Inc. v. DeWild Grant Reckert & Assoc. Co., 500 NW2d 250, 254 (SD 1993). The question is generally one of foreseeability. *Maguire Ins.*, 518 NW2d at 229-30. Ultimately, the "duty arises either by legislation or by the common law, through the ever-changing movement of social, political, and economic forces." Fisher v. Kahler, 2002 SD 30, ¶6, 641 NW2d 122, 125.

[¶17.]     With respect to negligence before Delka was enrolled and had any relationship with CCC, Delka relies on his experts' opinions that CCC failed to follow industry standards. As previously noted, those experts opined that CCC had a legal duty to market its insurance to Delka through trained, licensed insurance agents that would have provided correct information. As discussed above, however, Pennsylvania law explicitly exempts persons such as Burd (therefore Greentree) from insurance agent licensure. 40 Pa. Cons. Stat. § 310.3(b); *supra* ¶11 n6. Moreover, even if that statute did not apply, under Pennsylvania law, CCC's duty was limited to furnishing Greentree with policy certificates/summaries: Greentree owed Delka any remaining duties. *See* 40 Pa. Cons. Stat. § 756.2(b)(2), *infra* ¶¶24-

25. *See also* 1A Lee R. Russ et al., Couch on Insurance 3D § 8.10 (Clark Broadman Callaghan 1995) (citing Pennsylvania as a state that follows "venerable authority" requiring the employer to administer many of the "various acts required to make effective a policy of group insurance covering employees, such as obtaining the employees' applications, taking payroll deductions orders, reporting changes in the insured group, paying premiums and the like"). Thus, we have been directed to nothing in the statutes or common law of Pennsylvania imposing upon CCC a pre-enrollment duty to potential employees/enrollees such as Delka that would support Delka's claim of negligence.[10]

[¶18.]        Delka has also directed us to no Pennsylvania statute or case indicating that after the contractual relationship was established by enrollment, CCC owed Delka any independent duty apart from the contract. We therefore look to our decision in *Fisher Sand & Gravel Co.,* 1997 SD 8, 558 NW2d 864. In *Fisher,* this Court considered a situation where the relationship between the parties involved a contract and the plaintiff argued that failure to follow industry standards could also create a duty independent of that contract. *Fisher* acknowledged Delka's above quoted independent duty language from *Smith. See supra* ¶15. Nevertheless, this Court concluded that when a contract exists and is not breached, no action in tort arising out of that relationship will lie. "[W]hen 'the duties or

---

10.    We parenthetically note that the certificates of insurance CCC furnished to Greentree for delivery to enrollees stated in bold on the first page: "**THIS IS NOT WORKERS' COMPENSATION INSURANCE,**"(emphasis in original), and  the insurance identification cards stated above the space for the Driver's Signature: "**This Occupational Accident Plan is not a replacement for Workers' compensation Insurance.**" (Emphasis added).

obligations of the parties are contractual rather than fiduciary . . . a breach of those express or implied duties can give rise only to a cause of action in contract, not one in tort.'" *Fisher*, 1997 SD 8, ¶18, 558 NW2d at 869 (quoting Beck v. Farmers Ins. Exch., 701 P2d 795, 800 (Utah 1985)). Although this Court has acknowledged exceptions to this general rule (involving first party insurance relationships), CCC satisfied all of its contractual duties to Delka, and Delka has not shown that any of the recognized exceptions apply.[11] Therefore, the circuit court correctly applied the rule that "[i]f one in good faith fully complied with the contract, one cannot be held liable for actions arising out of the contract under a theory of negligence." *Id*. ¶19, 558 NW2d at 869.

[¶19.]     Delka has also failed to establish an independent duty giving rise to a cause of action for bad faith. Delka's factual allegation for this theory is the "suggestion or assertion of a fact" that the OAI policy was equivalent to workers' compensation insurance and that CCC was "intentionally suppressing facts" concerning the policy. There is no dispute, however, that CCC and Delka had no communications prior to Delka's enrollment with Greentree. Therefore, CCC could not have misrepresented or suppressed facts that led to Delka's decision to enroll in

---

11.    *Beck* recognized that in some cases the acts constituting a breach of contract may also result in breaches of duty that are independent of the contract and may give rise to causes of action in tort. *Beck*, 701 P2d at 801 n3. Some of those examples include intentional acts against an insured. *Id*. For example, failure to bargain in good faith, fraudulent activity, and certain conduct under unfair practice acts may result in tort liability independent from the concurrent contractual liability. *Id*. Such conduct is not at issue in this case or it is hereafter discussed.

OAI rather than workers' compensation insurance, and CCC cannot be liable on this theory.

[¶20.] Moreover, even if there were disputed issues of material fact concerning CCC's representations to Delka regarding coverage or premiums, there is no common law cause of action under Pennsylvania law for such bad faith conduct on the part of insurers. D'Ambrosio v. Pennsylvania Nat'l Mut. Cas. Ins. Co., 494 Pa 501, 507, 431 A2d 966, 970 (1981). Instead, insureds are relegated to Pennsylvania's statutory remedy. See 42 Pa. Cons. Stat. § 8371 (statutory bad faith).

[¶21.] Delka did not, however, plead a cause of action under 42 Pa. Cons. Stat. § 8371. In Delka's third amended complaint, he claimed that CCC violated the Pennsylvania Unfair Insurance Practices Act (UIPA).

[¶22.] Although Delka alleged violations of the UIPA, he has no cause of action under that act. The UIPA and the statutory bad faith statute (Section 8371) are independent acts providing different remedies. Furthermore, private persons cannot utilize the UIPA; it may only be enforced by the Insurance Commissioner of Pennsylvania. Smith v. Nationwide Mut. Fire Ins. Co., 935 FSupp 616, 620 (WDPa 1996) (stating that "it is clear that there is no private cause of action under the UIPA") (citations omitted); D'Ambrosio, 494 Pa at 507, 431 A2d at 969-70 (stating that the Insurance Commissioner of Pennsylvania is empowered to enforce the UIPA); Romano v. Nationwide Mut. Fire Ins. Co., 435 PaSuper 545, 552, 646 A2d 1228, 1232 (1994) (stating: "It is clear that the UIPA and the Department of

Insurance Regulations can only be enforced by the State Insurance Commissioner and not by way of private action.").

[¶23.] On the other hand, the statutory bad faith legislation (Section 8371) specifically creates a cause of action for private persons. *See Romano,* 435 PaSuper at 551, 646 A2d at 1231 (noting that the Supreme Court's refusal to create a common law bad faith remedy led to the Legislature developing a statutory bad faith remedy, 42 Pa. Cons. Stat. § 8371). Although it has been stated that violations of UIPA may be used as evidence for a bad faith claim, the UIPA itself provides no private remedy without Pennsylvania's bad faith statute (Section 8371). *Romano,* 435 PaSuper 545, 646 A2d 1228 (holding that an insured may reference violations of UIPA to illustrate the bad faith claim). *But see* Parasco v. Pac. Indem. Co., 920 FSupp 647, 655 (EDPa 1996) (explaining violations of the UIPA did not establish statutory bad faith per se). Ultimately, Delka did not bring his bad faith claim under his exclusive statutory remedy, nor has he cited other authority supporting an independent bad faith duty arising under the facts alleged in this case.[12] Therefore, Delka's bad faith claim fails.

---

12. Delka does point out that bad faith can also arise from a frivolous or unfounded refusal to investigate or communicate with the insured. See Frog, Switch & Mfg. Co., Inc. v. the Travelers Ins. Co., 193 F3d 742, 751, n9 (3dCir 1999). Although we agree with this proposition, Delka's reliance on *Frog* is misplaced. That case involved an insurer's failure to defend its insured. This case does not involve a first party insured's claim for failure to defend. Delka's remaining authorities also involved conduct that is not relevant to Greentree's representations, marketing, and premium collection practices.

[¶24.]     Delka next contends that two statutory duties support negligence and bad faith.  Delka first relies on SDCL 58-30-92.[13]  That statute prohibits the issuance of an insurance policy in this state through any person other than a licensed agent.  The undisputed facts, however, reflect that the group policy was issued to Greentree through an agent (Southern States) in Pennsylvania.  Moreover, the South Dakota Legislature could not have intended that the South Dakota statute on issuance of policies in this state applied to employees enrolling for group benefits with out-of-state employers.  We finally observe that even if the statute applied to Delka's enrollment, to interpret the statute in the manner Delka suggests would require all employers to employ insurance agents to provide its employees with any group insurance benefits.  We do not read the statute to require such an absurd result.

[¶25.]     Delka also argues that CCC breached a Pennsylvania statutory duty to deliver an individual certificate summarizing the insurance coverage.  40 Pa. Cons. Stat. § 756.2(b)(2) provides:

> (b) Each group accident and sickness policy shall contain in substance the following provisions: . . .  (2) A provision that the *insurer* will *furnish to the policyholder*, for delivery to each *employe*[e] or member of the insured group, an individual

---

13.     That statute provides:

> No authorized insurer may issue or cause to be issued any policy, duplicate policy, or insurance contract covering a subject of insurance that is resident, located or to be performed in this state through any person who is not licensed as an agent under this chapter.  Violation of this section is a Class 2 misdemeanor.

SDCL 58-30-92.

certificate setting forth, in summary form, a statement of the essential features of the insurance coverage of such employe[e] or member and to whom benefits thereunder are payable. If dependents are included in the coverage, only one certificate need be issued for each family unit.

(Emphasis added.)

[¶26.] We note that this statute imposes two separate duties. First, the insurer (CCC) must "furnish" a certificate/summary to the "policyholder" (Greentree). *Id.* The statute separately requires that the "policyholder" (Greentree) must effect "delivery" of that certificate/summary on the "employe[e]" (Delka). *Id.* As is readily apparent, the statute does not impose any duty upon CCC to deliver the certificate/summary to Delka. That was Greentree's duty. Therefore, although this statute creates a duty for purposes of Delka's claims against Greentree, the statute creates no duty for purposes of Delka's claim against CCC.[14]

[¶27.] Nevertheless, Delka contends there is a disputed issue of fact whether CCC furnished certificates/summaries to Greentree. Delka, however, failed to raise this issue to the circuit court. Delka's arguments were limited to agency theories and direct liability with respect to overcharging. On appeal, Delka argues Burd's deposition reflects that CCC may not have delivered summaries to Greentree.

---

14. Delka relies on *Bierly v. John Hancock Mutual Life Insurance Co.,* 13 PaD&C3d 40, 46 (PaComPl 1979), for the proposition that both the insurer and the policyholder had a duty to deliver a summary to Delka. Although *Bierly* confirms that both the insurer and the policyholder have duties under the statute, it reinforces that the statutory duties are separate and distinct: "[40 Pa. Cons. Stat. § 756.2(b)(2)] places a duty upon both the *insurer* to *provide*, and the *policyholder* to *deliver*, a summary of the group insurance plan's features to the employe[e]." *Id.* (emphasis added).

Delka did not, however, provide this portion of Burd's deposition to the circuit court for its consideration. Therefore, this argument is waived.

[¶28.] Even if this argument were not waived, there is no *material* issue of disputed fact about the matter. Although Delka alleged that *he* never received a certificate/summary, that is not a material issue with respect to CCC because, as explained above, it was not CCC's duty to deliver the certificate/summary to Delka. That was Greentree's duty.

[¶29.] Finally, even if the issue were material, Delka failed to raise a factual dispute about the matter. CCC supported its Motion for Summary Judgment by submitting a Statement of Undisputed Facts, which specifically alleged in paragraph eight that:

> CCC caused certificates to be prepared describing the benefits provided, to whom payable and the Group Policy limitations, and caused such certificates to be delivered to Greentree as Holder pursuant to the Group Policy provision. . . .

Delka's response did not, however, raise a disputed issue of fact about this assertion. Instead, Delka only generally asserted that he disputed paragraph eight. Delka responded:

> Specifically, Delka disputes CCC's "undisputed facts" as listed in CCC's Statement of Undisputed Facts, ¶¶3, 8, 9, 22, 23, 27, 29, 30, 31, 34, 38, 39, 40, & 41.

This general response failed to raise a genuine issue of material fact as required by SDCL 15-6-56(e). "The party opposing a motion for summary judgment must be diligent in resisting the motion, and mere general allegations and denials which do not set forth specific facts will not prevent issuance of a judgment." McDowell v. Citicorp U.S.A., 2007 SD 53, ¶22, 734 NW2d 14, 21 (citations omitted); *see also*

#24288

Himrich v. Carpenter, 1997 SD 116, ¶18, 569 NW2d 568, 573 (noting "[w]hen challenging a summary judgment, the nonmoving party 'must substantiate his allegations with 'sufficient probative evidence [that] would permit a finding in [his] favor on more than mere speculation, conjecture, or fantasy.'"") (citations omitted). Delka's general objection to paragraph eight of CCC's statement of facts is precisely the type of general allegation that Rule 56 prohibits. Therefore, Delka failed to raise a material issue of disputed fact concerning CCC's duty to furnish summaries to Greentree, and the circuit court did not err in concluding that CCC violated no statutory duty. Delka's remaining causes of action asserting direct liability are discussed below.[15]

*Deceit*

[¶30.]      Delka's third amended complaint did not allege statutory deceit.[16] The common-law tort involves a misrepresentation of fact. The tort requires:

> [A] representation was made as a statement of fact, which was untrue and known to be untrue by the party making it, or else recklessly made; that it was made with the intent to deceive and for the purpose of inducing the other party to act upon it; and that he did in fact rely on it and was induced thereby to act to his injury or damage.

Grynberg v. Citation Oil & Gas Corp., 1997 SD 121, ¶24, 573 NW2d 493, 502 (citations omitted). It is undisputed, however, that CCC and Delka never communicated with each other prior to Delka's accident. Therefore, CCC could not

---

15.   The dismissal of Delka's negligence and bad faith causes of action also disposes of Delka's negligent misrepresentation claim.

16.   The elements of statutory deceit require an affirmative misrepresentation or intentional suppression of facts. SDCL 20-10-2.

have misrepresented any fact relating to premiums or coverage that caused Delka to purchase the OAI.

[¶31.]    In any event, Delka presented no evidence that CCC intended to deceive him.  In fraud and deceit claims, "[s]ummary judgment is proper [when a plaintiff] produces no evidence of deceitful intent on [defendant's] part. . . ."  Garrett v. BankWest, Inc., 459 NW2d 833, 847 (SD 1990) (citation omitted).  *See also* Roper v. Noel, 32 SD 405, 143 NW 130, 132 (1913) (stating that when "the connection of [defendant] with the fraud and deceit, if any, rests solely upon conjecture. . . .  [A] case should not [even] be submitted to [a] jury.") (citation omitted).  It is Delka's duty to assert facts suggesting CCC's intent to deceive in both the trial and the summary judgment context.  Because Delka did not identify any fact suggesting CCC's intent to deceive, summary judgment was correctly granted.

*Unfair Trade Practices*

[¶32.]    Delka contends that CCC breached duties it owed Delka under South Dakota's Unfair Trade Practices Act, SDCL ch 58-33.  CCC sold and delivered the OAI policy to Greentree in Pennsylvania.  Burd's representations to Delka regarding the OAI policy took place over the phone, with Delka in South Dakota and Burd in Pennsylvania.  Although the parties agree Pennsylvania law applies, Delka argues that CCC violated SDCL ch 58-33 by making deceitful statements concerning coverage.  Although Delka does not cite any particular statute in that

chapter, SDCL 58-33-5 prohibits insurer misrepresentation concerning insurance coverage.[17]

[¶33.] The alleged misrepresentations, however, only took place between Delka and Greentree through Burd, Greentree's employee. Delka makes no claim of direct communications between Delka and CCC. Therefore, CCC cannot be directly liable for Delka's claims of misrepresentation. Those claims are merely a restated version of the barred agency claims.

*Fiduciary Duty, Conversion, Fraud and Concealment*

[¶34.] A fair reading of Delka's complaint reflects that he only alleged "defendant Greentree" breached fiduciary duties and committed conversion. No such allegation was made against CCC. Furthermore, Delka's cause of action for fraud and concealment alleges the same factual and legal basis for the causes of action previously dismissed. Summary judgment was correctly entered on these remaining claims.[18]

---

17. SDCL 58-33-5 provides:
    > No person shall make, issue, circulate, or cause to be made, issued, or circulated, any estimate, circular, or statement misrepresenting the terms of any policy issued or to be issued or the benefits or advantages promised thereby or the dividends or share of the surplus to be received thereon, or make any false or misleading statement as to the dividends or share of surplus previously paid on similar policies, or make any misleading representation or any misrepresentation as to the financial condition of any insurer, or as to the legal reserve system upon which any life insurer operates, or use any name or title of any policy or class of policies misrepresenting the true nature thereof. Violation of this section is a Class 2 misdemeanor.

18. Delka's brief also asserts direct liability on causes of action for "concealment, amongst others." Because there is no direct liability argument and authority
    (continued . . .)

#24288

[¶35.]    Affirmed.

[¶36.]    GILBERTSON, Chief Justice, SABERS, KONENKAMP, and

MEIERHENRY, Justices, concur.

_____
(. . . continued)
    on concealment and other unidentified causes of action, we do not address
    them.